HOWARD KENNEDY, PLAINTIFF IN ERROR, v. OTOE COUNTY NATIONAL BANK, DEFENDANT IN ERROR.

1. **Banks.** I., the president of a national bank in Nebraska City, obtained from K., in the city of Omaha, his (K.'s) promissory note for the sum of $2,000 payable to I., or order, and payable on demand, for the purpose of purchasing stock in the bank of which he was president. I. procured the note to be discounted by his bank, and had the proceeds thereof placed to his credit therein, and he afterwards drew the same out by checks on the bank. None of the officers of the bank, except the president, were aware of the character of the note, or that it had been given for stock. *Held*, in an action on the note, that the bank was entitled to recover.

2. ———: WHEN BOUND BY ACT OF A PRESIDENT. Representations of the president of a bank, made in transacting its business, are admissible in evidence against the bank; but statements made by him away from the bank, in reference to matters in which the bank has no interest, are not admissible. *Merchants Bank v. Rudolf*, 5 Feb., 527, cited and adhered to.

3. ———: ———. Like other agents, the president of a bank must act within the scope of his authority, in order to bind his principal, unless his acts have been ratified.

ERROR to the district court for Otoe county. Tried below before POUND, J., and a Jury. Verdict for plaintiff there. Judgment. Motion for a new trial overruled. Cause brought up by defendant, Kennedy, upon petition in error. The facts of the case are sufficiently stated in the opinion.

*S. H. Calhoun*, for plaintiff in error.

1. The president of a national bank is its chief executive officer, and has a general supervision of its affairs—notice to him will be notice to the bank. *McCann v. State*, 4 Neb., 324, and cases there cited. The same is true of a stockholder (who is a party to the transaction) of an incorporated banking association.

*Stockdale v. Keys*, 79 Penn. St., 251. An endorsee of such a note cannot recover when he is implicated in, or privy to, the original transaction. *Kittle v. DeLamater*, 3 Neb., 326.

2. All the circumstances tend to show that this was an arrangement between the president and the cashier of this bank to get Kennedy's paper to use as assets in lieu of the money which had been paid out of the bank to the original owner or owners of some of the stock then held in Irish's name, and not an ordinary discounting of a note payable by Kennedy to Irish and endorsed by Irish to the bank. This note was never protested, showing that the bank with regard to this note never followed the usual course of business. All the payments on this note were made by Irish, except one payment of $10, being money of Kennedy's in Metcalf's hands, and misapplied by Metcalf, without Kennedy's knowledge or consent, upon this note, and the bank never claimed anything from Kennedy until Irish became insolvent. If it was an ordinary discounting of paper, where was the profit? What was realized for the benefit of the stockholders in this bank? For the evidence all shows that it was not discounted a single penny, that Irish was credited with the full amount. The peculiar manner of making this pretended discount is noteworthy. It was not done at the counter or at the officer's desk, but in a back room, and instead of being an open and usual transaction, Metcalf quietly places on file a memorandum in his own handwriting for the book-keeper to enter up.

If a bank officer receive a promissory note from the maker, no consideration passing, and place the note in the bank in order to make a show of assets, even if such object be known to the maker, he is not liable on the note. *Agricultural Bank v. Robinson*, 24 Me., 276. *Lime Rock Bank v. Hewitt*, 50 Me., 269. And the agents knowledge of want of consideration, when acting for the

principal, is notice to the principal, however that knowledge may have been acquired. *Union Bank v. Campbell*, 4 Humph., 396. *Fulton Bank v. Canal Co.*, 4 Paige, 137. 2 Parsons on Notes, 27, 28, 29. Edwards on Bills, 316, 317.

3. In order to recover on accommodation paper plaintiff must have received the same in good faith, and whatever shows him to have received it *mala fide*, or with notice of the facts, will defeat his right of recovery. Edwards on Bills, 320, and note 5. *Woodhull v. Holmes*, 10 Johns., 270. *Skilding v. Warner*, 15 Johns., 270. *Brown v. Taber*, 5 Wend., 566. *Wardell v. Howell*, 9 Wend., 170. *Small v. Smith*, 1 Denio, 583.

*M. L. Hayward*, for defendant in error

The testimony shows clearly that Irish and Kennedy alone knew how or why the note was executed. Metcalf and Ashton swear that they never knew anything about it. The note bears date June 23d, 1873, and on June 24th, 1873, it was presented at the bank by Irish, and discounted by the cashier in the ordinary manner over the bank counter. It was discounted for cash, and the money used by Irish, not to buy or pay for stock, but for his own private use. (See testimony of Ashton.) The note bears interest from date at 12 per cent, hence bank could not pay less than its face. Act of Congress, 1864, sec. 30. Morse on Banking, 16, 20. Its bearing interest shows that the maker's intention was to have it run some time. *Lockwood v. Crawford*, 18 Conn., 361, 371. For this reason and because interest was promptly paid it was allowed to run. A demand could only be required to hold Irish the endorser, and his paying the interest on the note for over two years made such demand unnecessary. Irish was a director of the bank, hence he had due notice that the note was not paid. *Merchants Bank v.*

*Rudolf*, 5 Neb., 541.   When the interest was not paid then Metcalf called on Kennedy for interest and princi- pal, thus showing that there was no collusion between Kennedy or Irish and Metcalf.   One payment of $10 was made on the note out of Kennedy's money, and he made no objection, although notified at once.   When re- quested to pay the note Kennedy made no defense, but pleaded only hard times and asked for time.   The bank having discounted the note one day after its date for value with no notice of any fraud, took the note with all the rights of an innocent indorsee of time paper bought before maturity.  1 Parsons on Contracts, 218.  *Furman v. Haskins*, 2 Caines, 369.   *Merritt v. Todd*, 23 N. Y., 28.   *Hendricks v. Judah*, 1 Johns., 319.  Story on Notes and Bills, 208, note 3.   *Thurston v. M'Kown*, 6 Mass., 428.   Bank officers cannot bind the bank by an unlawful act, nor outside the place of business, nor outside the line of business of the bank as this transaction clearly was.   Sec. 8, act of congress, 1864.   *Merchants Bank v. Rudolf*, 5 Neb., 539.   *Miller v. McIntyre*, 1 Peters, 59 and 60.   *United States v. Dunn*, 6 Peters, 51.  *Bank of Metropolis v. Jones*, 8 Id., 12.  *First National Bank v. Ocean National Bank*, 60 N. Y., 291.   *Franklin Bank v. Stewart*, 37 Me., 519.   *Washington Bank v. Lewis*, 22 Pick., 24.   *Harper v. Calhoun*, 7 How. (Miss.), 203.   *Wyman v. Hallowell*, 14 Mass., 262. *Lloyd v. West Branch Bank*, 15 Penn. State, 172. *Bank Com'rs v. Bank of Buffalo*, 6 Paige, Ch., 497. *Merchants Bank v. State Bank*, 10 Wallace, 675–6.

MAXWELL, J.

In the year 1875, an action was commenced in the dis- trict court of Otoe county against the plaintiff in error and O. H. Irish, to recover the sum of $2,000 and inter- est, upon a promissory note, of which the following is a copy:

" $2,000.                    NEBRASKA CITY, June 23d, 1873.

" On demand, I promise to pay to O. H. Irish, or order, two thousand dollars, at the Otoe county National Bank, with interest at the rate of 12 per cent per annum, for value received.                    " H. KENNEDY."

On the back of the note were several endorsements of payments of interest. The note on the day after its date was transferred to the defendant in error.

The plaintiff in error answered the petition of the defendant in error, alleging that he received no consideration for said note whatever, and that the defendant in error was not an innocent purchaser or holder thereof; that said note was made as an accommodation note, to enable Irish to purchase certain additional shares of stock in the bank of the defendant in error, and that the cashier of said bank had agreed to carry said note; that he was led to believe that he had nothing to fear therefrom, as the stock would pay said note if it became necessary, and that the dividends would pay the interest thereon; that the object of purchasing additional shares of stock was to enable the then cashier, and his friends, to control the bank, and elect Irish president thereof; that being induced by these representations, and being willing to accommodate said parties, and upon no other consideration he executed the note in question, and delivered the same to Irish for the purpose of being endorsed and delivered to the defendant in error, upon the understanding and agreement hereinbefore set forth; that at the time of delivering said note to Irish, he (Irish) delivered to plaintiff in error twenty shares of the stock of said bank, to be held by him as security against liability on his part upon said note, of all of which facts the bank had full knowledge; that afterwards the bank requested the plaintiff in error to deposit said shares in said bank for safe keeping, agreeing that said shares should be held by it for the purpose of securing said note; that plain-

tiff in error relying upon said representations deposited said shares in said bank, that the bank disposed of said stock and appropriated the proceeds thereof to its own use, and that no part thereof has been applied to the payment of the note.

The plaintiff in the court below filed a reply to the answer, denying all the allegations of new matter therein contained.

It appears from the testimony in the case that Kennedy, prior to the time of the execution and delivery of the note in controversy, had another transaction with the defendant in error, whereby he purchased twenty shares of the stock of the bank, giving his note therefor to the bank. This stock appears to have been purchased by him at the request of, and apparently as an act of friendship for, Metcalf, the cashier of the bank. It is claimed by the plaintiff in error, that the note in controversy, although payable to Irish, was in fact to be delivered to the bank as a part of the first transaction. In our opinion the proof entirely fails to sustain this view of the case.

Kennedy, on cross-examination, testified as follows:

Q. He (Irish) said to you, did he, that he wanted the note to buy stock with?

A. That was it exactly; that was the conversation.

Q. Was that the conversation about the time you gave the note?

A. At the date of the note. That was the conversation on that occasion and on previous occasions.

Q. That he wanted the note to buy stock with?

A. Yes, sir.

Q. Do you know what he did with that note?

A. Nothing, only what was afterwards developed.

Q. At the time you signed the note, you are positive he gave you the stock right there and then—handed it over to you?

A.   Yes, sir, certificates of stock.

Q.   You don't know whether he bought this stock?

A.   No, sir.

Q.   Nor how he paid for it?

A.   No, sir.

It also appears from the testimony that the note was signed and the stock delivered to the plaintiff in error in Omaha.

The plaintiff in error also testified that the original transaction with the bank, whereby he had purchased and held 20 shares of bank stock, was terminated and his note cancelled on the 24th day of June, 1873, the same day, as appears from the testimony, the bank discounted the note in controversy. It also appears from the testimony of Benjamin D. Ashton, teller and book-keeper of the bank, that the note in controversy was discounted by the bank on the 24th day of June, 1873, and the amount thereof placed to the credit of Irish, who drew the same out by checks on the bank. In this Ashton is fully corroborated by the cashier. There is an entire failure of proof to show that the twenty shares of stock left in Kennedy's possession as security for the payment of the note were ever delivered to the bank by Kennedy or any one for him, or that the bank sold the same or any portion thereof. The representations of the president of a bank, made in transacting its business, are admissible in evidence against the bank; but statements made by him away from the bank, in reference to matters in which the bank has no interest, are not admissible. Like other agents, a bank president must act within the scope of his authority in order to bind his principal; unless his acts are ratified.

In *Merchants Bank v. Rudolf*, 5 Neb., 527, it was held that statements made by a cashier, at casual interviews away from the bank, as to payments having been made upon its securities, were not binding upon the

bank.  We think that decision states the law correctly, and is applicable to this case.

From a careful examination of the entire record, we are satisfied that justice has been done in the case.  The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.