NATIONAL BANK OF CLEBURNE v. J. R. CARPER ET AL.

Decided February 15, 1902.

**1.—Note—Defense—Fraudulent Representations—Bank Officers.**

Where the president of a bank was one of the sureties on a railway contractor's bond, and in order to raise the money to relieve that liability induced his cosurety to execute a note to the bank by representing that it would be a mere matter of form and for the purpose of satisfying the bank examiner, as he had a contract with the railway company by virtue of which the money would be paid, the bank, having no knowledge of such representations, was not bound thereby, and could hold the cosurety liable on the note so executed, and upon which it had advanced money.

**2.—Same—Note in Renewal—Knowledge of Fraud.**

Where a party executes a note in renewal of another note claimed by the holder to be valid, but which such maker knows to be fraudulent or without consideration, the giving of the new note will operate to purge the transaction of fraud and as a waiver of the want of consideration.

**3.—Appeal—Time of Perfecting—Cross-Appeal.**

Where the plaintiff duly appealed from a judgment against it rendered at a term of court which lasted more than eight weeks, and a defendant who had been denied relief on his cross-bill against a codefendant filed no motion for new trial and gave no notice of appeal, but more than forty days after the judgment filed an appeal bond, there was no appeal perfected by him within the statutory twenty days, and he could not assign error against his codefendant. Rev. Stats., art. 1387.

Appeal from the County Court of Johnson.    Tried below before Hon. O. T. Plummer, Special Judge.

*D. W. Odell* and *L. B. Davis,* for appellant.

*Crane & Greer, S. C. Padelford,* and *Henry, Brown & Patton,* for appellee.

RAINEY, CHIEF JUSTICE.—Appellant sued I. R. Carper to recover a note for $716.66 with interest and attorney's fees, executed and delivered to it by said Carper on September 13, 1899.   On March 26, 1900, Carper filed his answer and cross-bill making S. E. Moss a party, and asked a recovery against him in the event appellant recovered against him, Carper.   The allegations were substantially that about May, 1898, Evans & Hoshour entered into a contract with the Gulf, Colorado & Santa Fe Railway Company to erect, for a certain stipulated price, certain machine shops, buildings, etc., to be erected at Cleburne, setting out fully the amount to be paid and the time and manner of paying same, and to secure the faithful performance of said contract, executed and delivered a bond to the railway company, giving the appellee, Carper, and defendant, Moss, and one Caps and James as securities on said bond.   That under the contract said Evans & Hoshour commenced the erection of said shops.

That the said S. E. Moss at the time was president and acting business manager of the appellant, and that the said Evans & Hoshour kept their

bank ccount with appellant and transacted all their financial business with the said bank. That said Moss was acquainted with the financial condition of said Evans & Hoshour. That on or about the 11th day of October, 1898, the said S. E. Moss, acting for himself and for the appellant herein, entered into a contract with said railway company and the said Evans & Hoshour, without the knowledge or consent of the said appellee and the said James and Caps, by which the said Evans & Hoshour transferred to the said Moss, for the benefit of himself and bank, all sums of money which were then due to the said Evans & Hoshour by the said railway company on account of the building of said shops, or which might become due thereafter, which contract was ratified and joined in by the said railway company.

That said contract and agreement was in violation of the appellee's and James' and Caps' rights as sureties on said bond and had the effect of releasing them on same. That afterwards the following sums of money were paid to said Moss and said bank by the said railway company under said agreement, to wit: October 17, 1898, $2250; October 27, 1898, $2250; November 7, 1898, $2280; November 25, 1898, $2250; November 25, 1898, $2250. That in addition to the amounts so paid, the said Evans & Hoshour were largely indebted to the said S. E. Moss and the said national bank in, to wit, about the sum of $10,000, and that by virtue of the said contract said amounts became due to the said S. E. Moss and the plaintiff, as above stated, and that the said Moss held said contract for his own protection and for the protection of the plaintiff herein.

That there were large sums of money still due and to become due to the said Evans & Hoshour by the said railway company under said contract which would be paid upon completion of the shops.

That about the 23d day of November, 1898, the said Evans & Hoshour abandoned the work under the contract made by them with the said railway company, and that the said Moss as acting manager of the bank was familiar with the transactions and dealings of the plaintiff and the said Evans & Hoshour, and with the transactions and dealings and state of accounts between the said Evans & Hoshour and said railway company, and took an active part and interest in and about said matters, and this defendant and Caps and James, sureties on said Evans & Hoshour's bond, relied upon and trusted said Moss to protect their interest in the matter. That he represented to them that he was their friend and was going to stand to them, as they were neighbors, etc.

That on or about the 23d of November, 1898, the said Moss, acting as the president and manager of the plaintiff herein, stated to this defendant and James and Caps, the sureties on the Evans & Hoshour bond, that Evans & Hoshour had abandoned the contract between them and the railway company, and that it would take $3800 to finish and carry out the contract, and that he thought Evans & Hoshour's bondsmen ought to make a note to the bank for $4000 to be used to complete the contract.

That this defendant, I. R. Carper, replied that he had risked all that he intended to for Evans & Hoshour; that said Moss then represented to

the sureties that if they signed the note for $4000 they would not have a cent to pay; that he (Moss) then had a contract with the railway company, and that the parties would not have a cent to pay; that the bank had loaned Evans & Hoshour all the money they could afford to, and that the bank simply wanted the sureties to sign the note to show the bank examiner to keep in unison with the banking law; that the signing the note was a mere matter of form; that the plaintiff had loaned Evans & Hoshour all the money they could under the national banking law, and that if the bank should go on and should loan Evans & Hoshour any more money that the bank examiner would come here and "give them hell for it;" that under the contract he had made with the railroad company they would be protected; and that the first money paid in under same would be paid on said note, and that the money received on the $4000 note would only be paid out on bills O K'd by Leonard and William James; that, relying upon said representations and statements of said Moss, this appellee and the said Moss and Caps and James, as sureties for Evans & Hoshour, executed a demand note for $4000, payable to the plaintiff herein, due one day after date; that said note was signed by all the sureties in reliance upon the representations and statements as above set out.

That no money was ever paid on said note except about the sum of $2200, and that the bank and Moss had received sufficient money from the railway company upon the contract made between Evans & Hoshour and said railway company to fully pay off and discharge any sum of money paid out by the said bank on the said $4000 note if the same had been applied as it should have been.

That by reason of the contract of October 11, 1898, entered into between the said railway company and the said Evans & Hoshour and said S. E. Moss on account of plaintiff herein, the sureties on Evans & Hoshour's bond had in fact been discharged at the time said $4000 note was executed. That said $4000 note was wholly without consideration as to this defendant. That the note here sued on was given in lieu of and in renewal of this defendant's part of said $4000 note and for no other consideration; that at the time he signed the notes sued on in this case he was under the impression and belief that he was still liable on the bond of Evans & Hoshour, and that by signing the same he would be relieved from any danger or attempt to hold him liable on said bond; that when he signed the same he had no notice or knowledge of the facts as set out above, and particularly of the fact of the execution of the agreement of October 11, 1898, between said Evans & Hoshour and said Moss and sail railway company, as above set out.

That said agreement was concealed from him by said Moss, and while this defendant was ignorant of the same, was induced to sign the note sued on in this case in renewal of said $4000 note as a protection against his supposed liability on said bond, the defendant being induced to believe that the execution of the note sued on would relieve him of any further liability, whereas in truth and in fact he was not liable on said

bond, which fact was concealed from him by said Moss and plaintiff herein.

And further, that at the time of the execution of the $4000 note he was induced to sign the same under a mistake and a misconception of the facts which formed the consideration of the note, which facts were well known to plaintiff and were wrongfully and fraudulently concealed from this defendant, in this, the terms and stipulations of the contract between the said railway company and Evans & Hoshour had been changed by the contract of October 11, 1898, without the knowledge or consent of this defendant.

That at the time the note here sued on was executed the defendant was still ignorant and uninformed as to the conditions and considerations and matters and things surrounding and including and forming the considerations of the said $4000 note; that at the time the note sued on was executed he was still ignorant and uninformed of the fact that the said Moss held the contract and agreement of October 11, 1898, whereby the said Moss and the plaintiff held the legal and equitable contract for the whole of the contract price for the building of the said shops.

That as a further inducement for the signing of the note here sued on, and knowing that the defendant was uninformed as to the facts above set out, and in continuation of the scheme and unfair advantage taken to secure the execution of the $4000 note, the said Moss represented to the defendant that the making of the note sued on would close up the whole matter, and that the railway company would not further attempt to hold them responsible on the said bond, and that it would end the whole matter; and that, but for the representations and agreements of said Moss and his ignorance of the terms and state of facts, he would not have signed the note sued on.

That said statements were untrue and made to induce the defendant to sign said note; that said representations were made by both said Moss and Mr. W. F. Ramsey, as agents for plaintiff, to induce the defendant to sign the said note, and defendant, relying upon same, did sign it, and since the signing of the same he has been sued upon the bond.

On March 25, 1901, plaintiff filed a supplemental petition in answer to Carper's cross bill, and after general demurrer and · special exception and general denial, the plaintiff denied the special pleas that Moss had the right to bind the bank by his representations and statements to the defendant, and that the same was beyond the scope of his authority as president and representative of plaintiff, and that his representations were made in his individual capacity, and not as president and representative of plaintiff; that at the time of the execution of the note sued on Moss was not in any manner representing the plaintiff, but was representing himself; that W. F. Ramsey was representing plaintiff, and that Moss, Caps, and James were representing themselves; and that

as a matter of convenience to the sureties on the $4000 note the amount due by each was ascertained, and it was understood that each was to assume his part of the $4000 note and pay his share of the $4000. Both the cross-bill and the supplemental petition were sworn to.

Moss answered Carper's cross bill, and interposed a general demurrer, which was sustained by the court. Carper refused to amend, and judgment was rendered against him on the demurrer. On a trial between the bank and Carper before a jury, judgment was rendered for Carper, from which the bank appealed.

The evidence shows that Moss, Carper, James, and Caps were the sureties on the bond of Evans & Hoshour for the faithful performance of their contract with the railway company to build machine shops, etc., for the sum of $62,000; that Evans & Hoshour transferred to Moss for the benefit of himself and the bank all sums of money that were due or might become due and owing to them by the railway company by virtue of said contract; that on or about November 23, 1898, Evans & Hoshour, being financially embarrassed, were unable to carry out their contract and were contemplating abandoning the work. Moss, then the president of the bank, had a conference with Carper, James, and Caps, in which Moss told them that they, including himself, ought to make a note for $4000, as it would take about that much to finish the work and carry out the contract for which they were sureties. Carper replied that he had risked all that he intended to for Evans & Hoshour. Moss then stated that if the note was executed they would not have a cent to pay. That he had a contract with the railway company that would protect them; that the bank had loaned Evans & Hoshour all the money it could afford to, and that the bank simply wanted the sureties to sign the note to show the bank examiner to keep in unison with the banking laws, etc., and that the first money paid in under the contract he held should be applied to the payment of the note. Whereupon a note for $4000 was executed by Moss, Carper, James and Caps, payable one day after date to the bank; and it was further understood that the money arising therefrom should only be applied to the payment of bills O K'd by James and one Leonard. The note was executed on the faith of said representations.

Subsequently the $4000 note was placed by the bank in the hands of W. F. Ramsey, an attorney, for collection. On September 13, 1899, the date of the execution of the note in suit, Ramsey called on the parties for settlement thereof. James, Carper, and Caps went to his office. Considerable conversation was had, Carper stating the conversation had with Moss when the $4000 note was executed, and objecting to paying the notes. Ramsey stated he knew nothing of that matter; that he had the note and would like to collect the money. Moss was phoned and went over. When there Carper mentioned the former statements made by Moss, which Moss at first denied, but afterwards admitted. Carper then asked Moss about the contract he had with the

railway company for their protection, and Moss replied that it "had gone to hell." He also said that he did not believe there would be any suit on the bond. Ramsey stated that he was inclined to believe what Moss said about there being suits brought on the bond, and if there was, he would go to Galveston, if they needed his services, and do what he could for them. The bills that had been O K'd and the amounts paid thereon were gone over, and the whole matter was discussed, and it was finally agreed among them that they would each settle his proportionate part of the $4000 note, Carper paying a small amount of cash on his one-fourth and executing the note in suit for the remainder. Carper knew nothing of the nature of any contract held by Moss with the railway company. Suit has been brought on the bond, but so far as the evidence shows the sureties have had nothing to pay thereon. Soon after the $4000 note was executed Evans & Hoshour threw up the job and it was completed by the railway company.

Numerous errors are assigned for which a reversal of the judgment is sought, but we deem it unnecessary to discuss them seriatim, as the evidence, in our opinion, fails to show a valid defense on the part of Carper.

When the $4000 note was executed it was the result of a conference between Moss, James, Carper, and Capps, all of whom were sureties on Evans & Hoshour's bond for the erection of the machine shops, etc., for the railway company. Evans & Hoshour were unable, without further help, to comply with the contract, and in the event of their failure the sureties were liable to be mulcted in damages therefor. In this conference can it be said that Moss, though president of the bank, was acting for the bank in the transaction so as to make the bank liable for any representations he may have made in relation thereto? We think not. The note was not executed to secure the bank for moneys it had at that time expended, but was for money to be thereafter advanced. Moss was equally interested with the other sureties in guarding against liability on the bond, and they were endeavoring to prevent liability on the said bond. Moss, it is true, told them that he had a contract with the railroad by which they would be protected and have nothing to pay, but the bank, under the circumstances, should not be held responsible for that. They doubtless relied on this statement, for the statement as to the bank examiner was that the bank had loaned all the money to Evans & Hoshour it could under the banking laws of the United States. That if they didn't make this note, and the bank examiner came along and found the bank had been advancing money that way, he would give him "hell," or something like that. This last it seems could only be construed as to what might happen in the event the banking law was violated, and not that the bank would not hold them liable on the notes. It seems that they relied on the statement that they would be protected by the contract that Moss claimed to have with the railway company. In any event they should not have relied on these statements as binding on the bank, for Moss was acting for the common interest of himself

and the other sureties. Moss was one of the makers of the note, and the bank, having parted with value, is not chargeable with notice of Moss' statements as to its being a matter of form, that they would not have to pay it, etc., and such would constitute no defense to an action on the note. Bank v. Foote, 42 Pac. Rep., 205; Bank v. Seymour, 73 N. W. Rep., 724; Mead v. Pettigrew, 78 N. W. Rep., 945; Kennedy v. Bank, 7 Neb., 59; Allen v. Bank, 14 Am. St. Rep., 829.

It it were conceded that Carper could have defeated a recovery on the $4000 note on the grounds mentioned, the execution of the note sued on effectively precludes him from recovering in this action. Before giving the last note he knew the bank was claiming that he was liable, and was endeavoring to collect it. He knew that he had no protection under the contract that Moss claimed to have had with the railway company, as Moss told him "it had gone to hell." He could not defend on the statements made by Ramsey, because he made no misrepresentations, and his statements were mere expressions of opinion, and Carper testified he so understood them. Ramsey was acting for the bank in the settlement, and Moss for himself, and his statements were not binding on the bank. The amount of bills O K'd by James and Leonard and the amount expended by the bank was discussed, and the evidence fails to disclose any concealment or misrepresentation as to those matters. We find nothing in the record to relieve this case from the principle in Hunter v. Lanires, 82 Texas, 677, where it was held that "where one executes an obligation in renewal of a note claimed by the holder to be valid, but known to the maker to be fraudulent or without consideration, the latter will be deemed to have purged the transaction of the fraud and to have waived the want of consideration, and will not be permitted to plead it. So a note is supported by a sufficient consideration if executed to secure the abandonment of suit brought to enforce a doubtful right, or in compromise of a disputed claim in good faith, though it ultimately appears that the claim was without merit." Citing Keope v. Vagle, 36 Iowa, 87; Babcock v. Hawkins, 23 Vt., 561; 1 Dan. Neg. Inst., sec 205; 1 Add. Cont., sec. 14. See also Hockley v. Day, 80 Texas, 532.

Applying this principle to the facts in this case, the bank was entitled to recover the amount of the note sued on.

Appellee, Carper, filed cross-assignment of errors against appellee Moss, and asks, in the event the judgment against him be reversed in favor of the bank, that the judgment in favor of Moss be also reversed. Carper is not in a position to assign errors against Moss, he not having perfected an appeal from the judgment in Moss' favor. On March 28, 1901, a judgment was rendered against the bank in favor of Carper, and at the same time a final judgment on demurrer was rendered against Carper in favor of Moss. The bank filed a motion for a new trial, which was overruled, notice of appeal given, and its appeal was duly perfected, making both Carper and Moss parties thereto. Carper filed no motion for new trial, gave no notice of an appeal, but on May

10, 1901, filed an appeal bond payable to both Moss and the bank, which was over forty days after rendition of judgment. The court began on March 4, 1901, and adjourned May 25, 1901, continuing over eight weeks. Under article 1387, Revised Statutes, an appeal must be perfected within twenty days after rendition of judgment where the term under the law may continue for more than eight weeks. So it will be seen that Carper did not file his appeal bond within the time prescribed by law, and hence there was no appeal by him. Where a defendant fails to perfect an appeal from a judgment rendered against him in favor of a codefendant, he can not assign errors as against his codefendant. Anderson v. Silliman, 92 Texas, 560; Woetz v. Woetz, 93 Texas, 549.

The court by its judgment on the demurrer held that the allegations of the cross-bill showed no cause of action against Moss, which was final, and to entitle Carper to relief he should have taken the proper steps to avail himself in this court of the error, if any.

The judgment will be reversed as to Carper and rendered in favor of appellant bank, and affirmed as to Moss.

*Reversed and rendered in part; affirmed in part.*