## ARKANSAS FUEL OIL CO. v. UNDERWOOD.

### No. 6206.

Court of Civil Appeals of Texas. Texarkana.

Feb. 7, 1946.

Israel Smith, of Tyler, for appellant.

Fred Whitaker, of Carthage, for appellee.

HARVEY, Justice.

Arkansas Fuel Oil Company brought suit in the District Court of Panola County, Texas, against R. F. Underwood on a promissory note in the amount of $475.80, dated April 30, 1940, and due July 5, 1940. Underwood in his answer admitted signing the note, but alleged a failure of consideration in that it was given for gas and other products, together with money, delivered to his truck drivers without his knowledge and by collusive conduct between his drivers and the filling station attendants, and that he was induced to sign the note upon the representations of the agent of plaintiff that adjustments would be made in respect to the amount of the note. At the time the note was executed a mortgage on a Chevrolet truck belonging to Underwood was given to secure the payment of the note. Upon issues submitted to them, the jury found that an agent of the plaintiff made the representations to Underwood as alleged in his petition, and that he relied upon them. In addition, they found that at the time Underwood signed the note he did not know that courtesy cards had been issued to his drivers by the plaintiff, nor that these cards had been used by his truck drivers, and that he had not received any of the benefits of the sales to his drivers. All of these answers to the latter issues are without support in the evidence, inasmuch as Underwood himself testified to the contrary, and no one who testified in the case disputed his testimony. Based upon the jury verdict, the court entered judgment that the plaintiff take nothing as against the defendant, from which judgment this appeal has been prosecuted.

While as a general rule parol evidence is not admissible to vary the terms of a written instrument, there are exceptions such as fraud, accident, or mistake, and failure of consideration, which when pleaded and substantiated, are available to one who seeks to avoid the effects of such instruments. In the case now under consideration, R. F. Underwood testified that on the day he signed the note he knew something was wrong with his account to the extent of four or five hundred dollars; that Mr. Parker, agent of the plaintiff, said he didn't know anything was wrong with the account but that it would be adjusted, and that he relied upon this statement of Parker, which was false, to his damage. Further, that one month before he signed the note he knew the bills were too much, and that he knew the courtesy cards were being used by his drivers when the bills began coming in. He stated, too, that at no time thereafter did he make any claim in anywise to the plaintiff that there was an adjustment due on his account, for which the note was given, and during the year following the signing of the note he made a payment of $100 in October, 1940; $50 in December, 1940; and $50 on April 30, 1941. During this time the plaintiff made repeated demands upon him for payment of the note. The plaintiff introduced detailed statements on the trial showing that the defendant paid his account in full each month, except for the month of March, 1940, and that it was this month's account for which the note was given. This fact seems without contradiction in the record. Underwood said he did not make the payments, but that his son sent

in the money to pay the accounts for him. Bearing on the question of failure of consideration, some invoices for the month of November, 1939, were introduced by the defendant, none of which were embraced in the note, and no invoices were introduced covering the month of March, 1940. The only other witness used by defendant, Pat English, testified that the various truck drivers of Underwood, including himself, had been using courtesy cards of other companies for about seven and one-half years and that about fifty per cent. of the amount of the charges shown on the invoices were for cash and things other than gasoline and oil.

Under the fact situation presented, we think the plaintiff was entitled to an instructed verdict in its favor at the conclusion of the evidence. On the plea of failure of consideration the burden was on defendant to show such failure of consideration and how much. His testimony showed he was in South Texas, from October, 1939, to the last of March, 1940, the period covered by the dealings with plaintiff. An analysis of his testimony indicates that it was based entirely on conjecture of his own conclusions as to how much oil, gas, and grease was bought for his trucks. No invoices for March, which apparently had been mailed defendant, were introduced. English was questioned with reference to the invoices introduced in evidence, for November, 1939, but not about the March, 1940, account. His testimony as to what the other drivers for Underwood were doing about getting cash on the courtesy cards as he was doing was of no probative worth, since he merely stated he "imagined" they were doing so. Two other truck drivers of Underwood were present at the trial but were not used as witnesses. Having failed to show by competent evidence in what amount, if any, the account for March, 1940, was incorrect, Underwood did not sustain his plea of failure of consideration.

With regard to the defense of false representation urged by him in the procurement of the note, the same reasoning in part would apply as on the plea of failure of consideration. In addition to the usual necessary allegations and proof that false representations of material facts were made, and that they were untrue, at the time made, and known to be untrue by the party making them, and made with the intent of deceiving the other party, who relied upon them in executing a written instrument, it is also essential to allege and prove the damage occasioned to the party complaining. Avery Co. of Texas v. Harrison Co., Tex.Com.App., 267 S.W. 254; Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 51 A.L.R. 1. If we assume that defendant sufficiently pleaded the defense of fraud in the procurement of the note, the evidence is insufficient to establish the damage suffered by reason thereof.

Of primary importance, however, is the fact that defendant, knowing of the incorrectness of his account, as claimed by him, and that his drivers were using the courtesy cards, signed the note on April 30, 1940, and made payments thereon for a period of a year without at any time denying his liability or asking for an adjustment. Having signed the note under these circumstances, coupled with his subsequent conduct, he thereafter could not set up a failure of consideration for the note. We quote from the case of Twitchell v. Klinke, Tex.Civ.App., 272 S.W. 283, 288: "The extension of time granted by Klinke to Twitchell constituted a binding contract and operates to purge the transaction of the fraud charged. The plaintiff Klinke, having executed his part of the contract, was placed in a worse position by reason of having deprived himself, for a period of one year, of his remedy to collect the note by suit, and we hold he was entitled to plead waiver of any pre-existing fraud charged. National Bank v. Carper, 28 Tex. Civ.App. 334, 67 S.W. 188, 191, 192. This last case cited, it is true, lays down the rule as being applicable to a new note which was given in the transaction, but we see no reason for making any distinction between the granting of an extension of time and the giving of a new note—each operates to defer the payment of an original obligation. See, also, Hunter, Evans & Co. v. Lanius, 82 Tex. [677], 686, 18 S.W. 201."

In the case of Hunter, Exans & Co. v. Lanius, supra, quoted in the authority just above cited by us, occurs this language [82 Tex. 686, 18 S.W. 205]: "Where one executes an obligation in renewal of a note claimed by the holder to be valid, but known to the maker to be fraudulent or without consideration, the latter will be deemed to have freed the transaction of the fraud, and to have waived the want of

consideration, and will not be permitted to plead it."

In principle, we see no distinction between executing a note in lieu of one known to be without consideration, and in making a note to secure an accotint which one asserts is without consideration at the time he does so. See case of Lone Star Life Insurance Co. v. Shield, Tex.Com. App., 228 S.W. 196; and National Bank of Cleburne v. Carper, 28 Tex.Civ.App. 334, 67 S.W. 188.

For the reasons indicated the judgment of the trial court is reversed and remanded with instructions to enter judgment on the note sued upon in favor of plaintiff, with a foreclosure of the chattel mortgage given to secure such note.