Hardy GAGE, Appellant,

v.

G. E. LANGFORD et al, Appellees.

No. 5490.

Court of Civil Appeals of Texas,
Eastland.

April 30, 1981.

Rehearing Denied May 21, 1981.

Richard L. Scheer, Fillmore & Camp, Fort Worth, for appellant.

Frank Jennings, Graham, W. G. Thompson, Thompson & Cook, Breckenridge, for appellees.

McCLOUD, Chief Justice.

The principal issue in this contract case is whether the defendant who establishes fraud in the inducement as an affirmative defense, but retains valuable consideration received under the contract, must establish the extent of his damages when sued on the contract.

F. L. Livingston, the owner of a promissory note in the original principal sum of $550,000, sued the maker, Hardy Gage, for the unpaid balance. Gage alleged fraud in the inducement as an "affirmative defense" to payment of the note, and also filed a cross action against Livingston, Bill Briscoe, and G. E. Langford seeking damages for transactions independent of the original contract. Pursuant to Tex.R.Civ.P. 266, Gage was given the right to open and close after admitting plaintiff's right to recover as set forth in his petition, except so far as plaintiff may be defeated, in whole or in part, by the allegations of defendant's answer constituting a good defense. The evidence was undisputed that Gage was entitled to credits totaling $250,021.38. The trial court disregarded the jury's fraud findings and entered judgment for Livingston against Gage for $490,205.67, being the unpaid principal and interest after the allowance of the undisputed credits, plus attorney's fees of $122,551.42. Judgment was entered for Gage against Livingston, Briscoe, and Langford for $142,868.55. Gage was also awarded judgment against Langford for $11,698.87. Gage appeals.

Gage as "buyer" and Livingston as "seller," on behalf of Livingston, Briscoe, and Langford executed a "Contract of Sale" dated April 1, 1974. The promissory note in issue, which was originally owned by Livingston, Briscoe and Langford, was executed in connection with the contract of sale which provides in part:

Buyer agrees to pay seller Five Hundred Fifty Thousand Dollars ($550,000.00) due ninety (90) days from date hereof at interest of 9 percentum per annum. Seller agrees to assign to buyer the following oil, gas and mineral leases, the location of each being well known to the parties hereto, to-wit:

(A) *Archer County Leases:*

1. O. C. Sherley Lease
2. Campbell "AA" and "BB" Leases
3. Wright Campbell Lease

(B) *Jack County Leases:*

1. Shown Lease
2. D. R. Sewell Lease

Additionally, seller agrees to sell to buyer the following:

1. All *four and one-half* (4½) inch and five and one-half (5½) inch usable casing from the McDougal Lease in Archer County at the rate of Four Dollars Twenty-Five Cents ($4.25) per lineal foot. This casing shall be paid for by buyer as such casing is tallied out to buyer at Megargel Drilling Company yard.

\* \* \* \* \* \*

Buyer shall bear all expenses of operations carried on or incurred in connection with the five (5) leases in Archer and Jack Counties, being the first 5 leases hereinabove mentioned, from and after the date of this contract; provided, however, that in addition thereto, all expenses incurred by seller on these 5 leases shall be reimbursed by seller to buyer (sic) [buyer to seller], such expenses being incurred in connection with services and expenses incurred in connection with plugging and pulling rods, tubing and casing from said lease.

Seller shall allow buyer credit for the gross sale price of all pipe sold under seller's pipe contract with R. G. & R. M., Inc., et al, dated March 25, 1974, provided, however, that buyer is to reimburse seller for all expenses of seller in connection with such sales. Accordingly, any "net profit" on such sales of seller of said pipe shall apply to a reduction of the $550,000.00 note herein first above mentioned.

Seller shall assign or cause to be assigned to buyer the five (5) leases first above described upon payment of the total amount due to seller on the $550,-000.00 note *after allowing buyer all cred-* its to which he is entitled under this contract to be applied against said note. Accordingly, title to the oil, gas and mineral leasehold estate and personal equipment situated upon the 5 leases first above described shall not vest in buyer until seller has been fully paid therefor in accordance with this contract and the assignments provided for herein are delivered to buyer in accordance herewith.

The contract provides for the sale of additional pipe and tubing which is not in issue and will not be discussed.

In a former appeal of this controversy, we held that the contract was ambiguous, and parol evidence was admissible to show whether it was the intent of the parties that the five leases to be assigned would be "valid and subsisting," or leases that had been "salvaged out and had terminated." *Gage v. Langford*, 582 S.W.2d 203 (Tex.Civ. App.—Eastland 1979, writ ref'd n. r. e.). In the first appeal, the jury determined that terminated leases were to be assigned. In the instant appeal, the jury found that Livingston represented to Gage that he would be assigned "title" to the leases, and that the parties did not intend that Gage would acquire only the right to salvage and sell pipe and equipment on the leases, and be responsible for the proper plugging of the wells. The jury found in a series of issues that Livingston's representations regarding the assignment of title to the leases constituted fraud, and that the sellers could not assign title to the oil, gas and mineral leases. The jury also found that after Gage plugged all the wells on the leases the sellers were unable to assign a lease that was still in force and effect for the production of oil and gas.

The jury found that Livingston represented to Gage that there was a total of 271 salvage wells located on the five leases listed in the contract of sale; the representation was untrue; the representation was made for the purpose of inducing Gage to sign the contract; Gage relied upon the representation; and if the representation had been true, Gage would have in reasonable probability recovered additional casing.

The jury also found that Livingston made a fraudulent representation regarding the amount of usable casing that was available

from the "McDougal" lease, and that such representation was made to induce Gage to sign the contract of sale.

In the former appeal, we held that Gage was not entitled to rescind the contract because he failed to restore or properly offer to restore the parties to their original status, *Gage v. Langford*, supra. In the instant appeal, Gage did not seek rescission of the contract, nor did he seek damages or an offset.

Gage testified that he found only 206 wells (instead of the 271 as represented) on the five leases, and that he could not get any salvage from 51 wells because they were cemented from top to bottom. No issue was submitted to the jury as to the number of wells located, and no issue was submitted as to the amount of damages incurred by Gage because of the shortage of wells.

The jury did not determine the amount of damages incurred by Gage as a result of sellers' inability to assign "title" to the five oil and gas leases listed in the contract of sale. Nor did the jury establish the amount of damages resulting from the shortage of casing from the McDougal lease.

■ It is Gage's position that he need only establish "fraud in the inducement" to prevent a recovery on the note. We disagree. Gage salvaged every well that he could locate on the five leases. When the agreement was entered into, only the Shown and Sewell were producing oil. Gage plugged the wells and salvaged the equipment located on these leases. He has sold all of the pipe and equipment from the leases. He has not restored the pipe and equipment to the sellers, nor has he properly offered to restore the parties to the status quo. Gage has not established by jury finding the amount of damages he has incurred as a result of Livingston's fraudulent representations.

In *Dallas Farm Machinery Company v. Reaves*, 158 Tex. 1, 307 S.W.2d 233 (1957) the court stated:

For it is well settled that one who is induced by fraud to enter into a contract has his choice of remedies. "He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid."

Fraud in the inducement was urged by the defendant in *Edward Thompson Co. v. Sawyers*, 111 Tex. 374, 234 S.W. 873 (1921), and the court said:

So construing the answer, it set up such fraud on the part of appellant as would entitle appellee to a rescission of the written contract with a recovery of the payments he had made, or to an award of damages for the injury he had sustained. . . .

In *Mason v. Peterson*, 250 S.W. 142 (Tex. Comm'n App. 1923, holding approved), the defendant who was sued on a promissory note alleged fraud in the inducement. The court held:

Where fraud or mutual mistake enters into a contract of this character, the buyer has an election of inconsistent remedies. He may, if he acts promptly after discovering the fraud or mistake, or within a reasonable time after he should, by the exercise of proper diligence, have discovered it, rescind the contract and recover back the consideration if he has paid it, or, if he has not paid it, he may cancel his obligations under the contract. He must, however, in such cases, place the seller in status quo. On the other hand, he is not bound to rescind and may elect to retain the property, in which event he is entitled to relief to the extent of his injury by reason of the fraud or mistake.

\*    \*    \*    \*    \*    \*

But, if he has not paid the consideration and seeks no affirmative relief, he is entitled to an abatement in the amount of his obligation to the extent of his injury, whenever his vendor or a holder of his obligation charged with notice of the fraud or mistake seeks to enforce

payment of that obligation. Fraud or mistake enters into and vitiates the contract *to the extent of the resultant injury and is a defense to a suit on his obligation* . . . . (Emphasis added)

In *Massey-Ferguson, Inc. v. Easterwood*, 363 S.W.2d 897 (Tex.Civ.App.—Amarillo 1962, writ ref'd n. r. e.) the defendant was sued on a note given for the purchase of five tractors. Defendant, who did not return the tractors, urged fraud in the inducement as a defense, but failed to establish his damages. The court in reversing a take nothing judgment entered by the trial court, said:

> The effect of the holding of this case in denying appellant any recovery and cancelling the note and mortgage would be that appellee was damaged the amount of the balance due on the note and there is nothing in this record to justify such a holding.

The defendant in *J. I. Case Co. v. Fry*, 125 S.W.2d 395 (Tex.Civ.App.—Amarillo 1939, no writ) executed two notes in partial payment of a tractor. One note was paid, and when plaintiff sued on the other note defendant urged fraud in the inducement as a defense. Based upon jury findings of fraud the trial court entered judgment that plaintiff take nothing. The Court of Civil Appeals reversed and rendered, saying:

> The first contention made by appellant is that, it having made a prima facie case by introducing the note and chattel mortgages and appellee having failed to plead and prove he was damaged by the alleged fraudulent *representations of the agent*, the trial court erred in overruling his motion for a peremptory instruction and for a judgment non obstante veredicto.
>
> \* \* \* \* \* \*
>
> As we have stated, appellee did not seek to recover damages of appellant on account of the alleged false and fraudulent representations of its agents and representatives, but sought the equitable relief of cancellation of the note. He did

not allege nor prove a case in which such relief can be granted. His contention seems to be that the note sued upon, which is the last of a series, should be cancelled on account of the alleged fraud practiced upon him by the agents of appellant and that the question of whether or not he suffered any damage is immaterial. He does not allege nor prove that he was damaged in an amount equal to the principal, interest and attorney's fees due upon the note but, in effect, seeks arbitrarily, and without either allegation or proof, to fix that sum as the amount to which he is entitled in the nature of an offset to the entire purchase price of the tractor and cancel the remaining indebtedness merely because, perchance, it represents the amount still due upon the transaction. No offer was made to return the machine and no effort made to recover the amount which he had paid nor any portion of it. Under the well established rules of law, appellee was not entitled to the relief sought. Few principles of law are better established than that in a case where false representations are alleged to have deceived a party and induce him to sign a contract, in order to avail himself of the equitable remedy of cancellation, he must not only allege and prove the falsity of the representations and that they misled him and induced him to sign the contract, but that he has been damaged thereby and the extent of his damages. Appellee's contentions in this respect furnish a striking example of the importance of the rule and its necessity for the proper administration of justice. He does not seek to rescind the entire contract but to cancel one of the notes executed by him. He does not tender the tractor back to appellant nor seek to recover the amount he has paid. Obviously, therefore, if he should be permitted to recover upon the case pleaded and proved by him, it would in effect, be permitting him arbitrarily to establish his own damages without pleading or proof. The amount of the note remaining unpaid

would be of no consequence. He would, in effect, be saying to appellant, "You practiced fraud upon me and, therefore, I am not liable to you for the balance due on the transaction regardless of its amount."

The defendant in *Arkansas Fuel Oil Co. v. Underwood*, 193 S.W.2d 276 (Tex.Civ. App.—Texarkana 1946, no writ), when sued on a promissory note alleged fraud in the inducement as a defense. The jury found that the note was induced by misrepresentation and the trial court entered judgment that plaintiff take nothing. In reversing the trial court, the Court of Civil Appeals said:

> If we assume that defendant sufficiently pleaded the defense of fraud in the procurement of the note, the evidence is insufficient to establish the damage suffered by reason thereof.

In *Arnold v. Wheeler*, 304 S.W.2d 368 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.), the defendant urged fraud in the inducement, but had not returned the benefits received under the contract. The court held:

> Defendants also claim that they escaped from the force of the contract because the jury found in answer to fraud issues, that they were fraudulently "induced" to enter into the contract on the basis of a false financial statement. The trial court correctly disregarded those findings for several reasons. The first reason is that defendants testified they functioned under the contract for more than a year, but they have never made, nor offered to make, any restitution, though they retained the benefits of the contract. If the contract were fraudulently induced, defendants are not entitled to retain the benefits which they collected under the contract....

Citing *Arnold*, the court in *Finch v. McVea*, 543 S.W.2d 449 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.) said:

> Even more specifically, if an instrument is fraudulently induced, the party de-frauded is not entitled to benefits under the instrument....

The rule was stated in *Free Sewing Machine Co. v. S. T. Atkin Furniture Co.*, 71 S.W.2d 604 (Tex.Civ.App.—Austin 1934, no writ) as follows:

> A person who has been so defrauded may set up the fraud by way of defense when sued on the contract or transaction, and resorting to equity he may cancel or rescind the contract, return the thing bought, and receive back what he has paid; and he may both rescind and recover damages where both are necessary to make him whole....

In 37 Am.Jur.2d, Fraud and Deceit, § 340 it is stated:

> In order to set up fraud in a contract or transaction as a defense to an action therein, it is held to be generally necessary to have rescinded the contract or transaction for the fraud and to have returned or offered to return the benefits or consideration received....

37 Am.Jur.2d, Fraud and Deceit, § 329 provides:

> A purchaser of personal or real property who is induced to enter into the contract of purchase by the fraud or misrepresentations of the seller or vendor or his agent or representatives has, as a general rule, an election to pursue one of several remedies. He may, despite the fraud, elect to affirm the contract, retain the property received under it, and bring an action at law for fraud and deceit against the seller or vendor to recover the damages sustained by reason of the fraud or misrepresentations, or if he is sued for the agreed price, he may set off or recoup the damages resulting from the fraud. Fraud of the seller or vendor in inducing the sale is likewise a ground for the avoidance or rescission of the contract.

Remedies that are available to a defrauded party are discussed in Williston on Contracts, Third Edition § 1523 as follows:

> Although relief may be obtained by a defrauded party to a contract in a variety

of ways, such relief is always based on one of three general remedies which are open to the defrauded party:

1. A right to damages for being led into the transaction. Under this form of relief the injured party does not seek to undo the fraudulent transaction but claims sufficient compensation to make his position as good as it would have been had he not entered into the transaction at all;

2. Rescission of the fraudulent transaction and restoration of the situation which the parties occupied before the fraudulent transaction was entered into; or

3. Enforcement against the fraudulent person of the kind of bargain which he represented that he was making.

We think that a party urging fraud in the inducement, either as a plaintiff or a defendant, must establish not only the fraud, but also the correct remedy. Gage did not establish a remedy. Under his theory, if there had been 270 wells instead of 271 as represented, he could have salvaged the 270 wells, sold all the pipe and equipment, retained all the valuable benefits received, and yet defeat recovery on the contract if the jury found that the fraudulent representation that there were 271 wells induced him to sign the contract. We think that the defrauded defendant, like the defrauded plaintiff, must also establish a proper remedy. We do not agree with Gage that the plaintiff should have pleaded alternatively for quantum meruit. Gage was urging fraud in the inducement as an affirmative defense, and he had the burden of establishing the proper remedy.

We recognize that there are cases containing language that a defendant need only establish fraud to prevent recovery on a contract. See *Roberts v. Tipton*, 562 S.W.2d 921 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.); *Costello v. Sample*, 470 S.W.2d 446 (Tex.Civ.App.—Waco 1971, writ ref'd n. r. e.); *Dreeben v. Sidor*, 254 S.W.2d 908 (Tex.Civ.App.—Amarillo 1952, writ ref'd n. r. e.); *Southern Rock Island Plow Co. v. Williams*, 80 S.W.2d 340 (Tex.Civ.App.—Amarillo 1934, writ dism'd); 26 Tex. Jur.2d, Fraud and Deceit § 83. We think, however, that in a case of this nature, where the defendant retains valuable consideration received under the contract, he must establish the extent of his damages. We hold that the court properly granted the sellers' motion to disregard the jury's fraud findings because Gage failed to establish a proper remedy by securing jury findings of the extent he was damaged by the fraud.

In defendant's first amended cross action he alleged that sellers' failure to convey title to the oil, gas and mineral leases violated the Deceptive Trade Practices Act.[1] The trial court sustained the sellers' special exception urging that Gage was not a consumer under the DTPA. Thereafter, Gage filed his second amended cross action, on which he went to trial. There is no allegation in this pleading that sellers violated the DTPA. Gage contends that the trial court erred in sustaining sellers' special exception.

Sellers argue that Gage, upon filing his second amended cross action, abandoned any previous claim asserted under the DTPA. We agree. It is well settled that an amended pleading supersedes the instrument amended. *Hatley v. Schmidt*, 471 S.W.2d 440 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.). The court in *Town of Port Acres v. City of Port Arthur*, 340 S.W.2d 325 (Tex.Civ.App.—Beaumont 1960, writ ref'd n. r. e.) held that the appellants, who filed an amended pleading after the court sustained exceptions to the former pleading, waived any error of the trial court in sustaining exceptions to the former pleading. See also *Trevino v. Southland*

---

1. Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41 et seq., hereinafter referred to as DTPA.

*Greyhound Lines*, 57 S.W.2d 281 (Tex.Civ. App.—San Antonio 1933, writ dism'd); *Cornish v. Houston Terminal Land Co.*, 257 S.W. 575 (Tex.Civ.App.—Galveston 1923, no writ); 3 McDONALD, TEXAS CIVIL PRACTICE § 10.14.5 (1970).

▮ Furthermore, even if Gage has not abandoned his claim under the DTPA, the trial court properly sustained the special exception.

The contract was signed on April 1, 1974, and in Gage's first amended cross action he alleges that representations as to sellers' ability to convey the leases were made on or prior to that day. As of that date, § 17.45 of the Act defined a "consumer" as "an individual who seeks or acquires by purchase or lease, any goods or services." "Goods" were defined as "tangible chattels bought for use." Effective September 1, 1975, real property was added to the definition of "goods." Defendant relies on the case of *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977) for his contention that purchasers of real property prior to the 1975 amendment are "consumers" within the coverage of the Act.

In *Woods*, the Supreme Court clearly stated that plaintiffs' purchase of real property, although prior to the effective date of the Act, included a purchase of services which gave rise to the deceptive practice made the basis of the claim. The Court stated that plaintiffs were not to be excluded from "the protection of the Act afforded 'consumers' merely because the sale included real estate as well as 'services.'"

In the instant case, there are no allegations that defendant purchased services from sellers and the agreement to assign the leases occurred prior to the inclusion of real property in the definition of "goods." Therefore, the trial court correctly sustained the special exception because defendant was not a "consumer" of "goods or services" under the Act. *Ferguson v. Beal*, 588 S.W.2d 651 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ).

The jury found that Livingston agreed to pay Gage $1,750.00 for each well that Gage plugged from which he received no salvage and that there were 51 such wells. Based upon such findings the trial court awarded Gage a recovery of $89,250.00 plus interest from August 1, 1975. By cross-points, sellers argue that there is no evidence to support such findings; that such alleged oral agreement, if entered into, is unenforceable for want of consideration; and that Gage's claim is based on an alleged oral agreement that constituted no more than unaccepted offers and counteroffers of settlement.

▮ In deciding the no evidence point, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). The testimony of Gage and Cooke raises a question of fact as to whether the parties agreed that Gage would receive $1,750.00 for each well that was cemented from top to bottom and for which Gage paid the cost of plugging but received no salvage. Gage's agreement to plug the wells from which he received no salvage constituted legal consideration. We cannot say that the testimony merely establishes offers and counteroffers of settlement. There is evidence that the parties entered into an oral agreement.

All points and cross-points of error have been considered, and all are overruled. The judgment of the trial court is affirmed.

RALEIGH BROWN, Justice, dissenting.

I dissent. The jury's finding of fraud established an affirmative defense to the suit brought by Livingston. The trial court erred in disregarding such findings. I would reverse the trial court's judgment and render judgment that Livingston take nothing on the note. See *Roberts v. Tipton*, 562 S.W.2d 921 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.); *Costello v. Sample*, 470

942

S.W.2d 446 (Tex.Civ.App.—Waco 1971, writ ref'd n. r. e.); *Dreeben v. Sidor*, 254 S.W.2d 908 (Tex.Civ.App.—Amarillo 1952, writ ref'd n. r. e.); *Southern Rock Island Plow Co. v. Williams*, 80 S.W.2d 340 (Tex.Civ. App.—Amarillo 1934, writ dism'd); 26 Tex. Jur.2d, Fraud and Deceit § 83.