## ERWIN v. WHITE.

No. 4638.

Court of Civil Appeals of Texas. Amarillo. Sept. 28, 1936.

Rehearing Denied Nov. 2, 1936.

H. H. Cooper and A. A. Lumpkin, both of Amarillo, for appellant.

J. S. Stallings, of Claude, and S. E. Fish, of Amarillo, for appellee.

HALL, Chief Justice.

This is the third appeal of this case. The first judgment was reversed and the cause remanded, as shown in (Tex.Civ. App.) 54 S.W.(2d) 867. The report of

the disposition of the case upon the second appeal is found in (Tex.Civ.App.) 67 S. W.(2d) 1090, by which decree the judgment of the lower court was again reversed and the cause remanded. The third trial resulted in a judgment on November 9, 1935, in favor of White, the appellee.

Before the third trial the pleadings were amended in accordance with the suggestions made by Judge Jackson in the last report of the case. The pleadings, issues, and stipulations of counsel are sufficiently set out in the former reports to relieve us of the necessity of repeating them. Suffice it to say that Erwin, a farmer, had harvested and sold his wheat to H. E. White, who owned an elevator at Washburn, Tex. Erwin's action is based upon a contract alleged by him to have been made with White on or about July 1, 1931, by the terms of which he sold and delivered to White 6388.75 bushels of wheat, delivered at the elevator at Washburn.

White alleged that on or about the 18th day of July, 1931, after Erwin had finished hauling and delivering the wheat, he asked the defendant to advance him some more money on the wheat, in addition to about $400 which had been previously advanced for the purpose of enabling Erwin to pay the expense of harvesting, etc. That he did furnish Erwin 15 cents a bushel on the wheat already sold and delivered, and they agreed at that time that there was a marginal deposit of 10 cents a bushel on said wheat at Washburn. It was further expressly agreed at that time that as a part of the consideration for the advancement, plaintiff would protect said marginal deposit of 10 cents a bushel, and in the event the price of wheat on the Chicago market, December option, should decline at least 10 cents a bushel below the price existing on July 18, 1931, so as to consume said marginal deposit of 10 cents a bushel, and plaintiff failed or refused to protect said marginal deposit of 10 cents a bushel, then said wheat deal would automatically be canceled and closed out.

The court submitted the case to the jury upon two issues. By the first the court asked whether Erwin's contention as to the contract was true. This was answered in the negative. By the second special issue the court inquired whether the contract contended for by White as having been made on July 18, 1931, when White paid Erwin $750, was really made, and whether the parties then agreed, in consideration of said advancement of 15 cents per bushel, that in the event the price of wheat on the Chicago market, December option, declined more than 10 cents a bushel that it would be closed out, unless protected by Erwin's putting up additional money. This was answered in the affirmative.

The record shows that Erwin sold White all of his wheat at 33, 32, and 31 cents a bushel, respectively, according to grade, under the Chicago December option, payment to be made at any time plaintiff might demand settlement on or before December 1, 1931. It was stipulated that on July 18, 1931, wheat on the Chicago market was quoted at 57⅞ cents. On October 5, 1931, December option wheat on the Chicago market was quoted at 44⅞ cents.

White testified that under the contract as originally made, the plaintiff could have called for a settlement for his wheat on any date prior to December 1, 1931, and if he had not drawn any money, he would have paid him the Chicago market for the wheat, after deducting 31, 32, and 33 cents. That he would have paid Erwin 25 cents a bushel for his wheat on July 18, 1931, if Erwin had demanded a settlement, and under the agreement of that date Erwin could have demanded a settlement and pay for his wheat any date prior to December 1, 1931, on the above basis under the Chicago market, December option, minus 15 cents a bushel theretofore advanced, provided that between July 18, 1931, and the date of such demand wheat had not declined more than 10 cents a bushel.

It will be seen from the foregoing statement that the jury found in accordance with White's contention, and the court entered judgment in favor of White that plaintiff recover nothing; that through an error of the bookkeeper, defendant had paid plaintiff $192.68 in excess of what was justly due him, and that through a further error of the bookkeeper, the defendant neglected to deduct from the sum paid plaintiff the dockage charge, on account of inferior grade or weight, the sum of $98.49, and judgment was rendered in favor of White against Erwin for said sums, together with interest.

Appellant's first contention is that the contract of July 18, 1931, is a wagering contract and contrary to public policy. This contention has been settled contrary to appellant's proposition on a former appeal, and will not be further discussed.

A sufficient reply to the second proposition is that there was no recovery upon the contract of July 1, 1931.

The third proposition raises a more serious question. It appears from the bill of exception that after the jury had been impaneled and plaintiff had introduced his evidence in chief, appellee, through his counsel, requested a postponement until 1 o'clock in order that a witness might reach the court and testify first in behalf of the appellee. The court then adjourned until the time requested, when it was found that appellee's witness was still absent. The jury being in the box, the court waited for a few minutes and finally turned to the jury and said that the cause of the delay was the absence of one of appellee's important witnesses, and that the jury might be at ease. The appellant objected to this statement by the court because it was a comment upon the credibility of the witness, and at the request of appellant the court instructed the jury not to consider the remarks, whereupon appellant still excepted. About 3:30 p. m. the witness, Morse, appeared and testified in behalf of the defendant. The court qualified the bill with the statement that the court had no intention of intimating any opinion which the court might have as to the importance, the truth or credibility of the witness, but merely that defendant's attorney did not want to proceed without the witness, and that the court felt it was fair to wait for the witness for a reasonable time. That the court did not certify that it was a comment on the weight of the evidence, and did not regard it as such; that no motion was made to discharge the jury and declare a mistrial. The plaintiff excepted to the qualification.

The witness Morse, who caused the delay, testified that he did not tell Hamel that the appellee was advancing up to fifteen cents per bushel. This testimony was contradicted by Hamel as well as appellant.

In Lamar v. Panhandle & S. F. Ry. Co. (Tex.Com.App.) 248 S.W. 34, 39, it is said: "It is incumbent upon trial judges to exercise the greatest care in preventing the jury from ascertaining the views of the court upon the credibility of the witnesses or the weight he gives to their testimony."

R.S. art. 2185, provides that the judge shall so frame his charge as to distinctly separate the questions of law from questions of fact, and not therein comment on the weight of evidence.

■ In addition to the language quoted from the Lamar Case, supra, 24 Tex.Jur. 554, § 76, adds: "Consequently, it is error for the court to * * * single out a witness for remarks as to his credibility."

In 41 Tex.Jur. 730–738, it is said: "The judge should be careful not to say or do anything in the presence of the jury which is calculated to influence them in reaching a verdict. * * * He may not * * * comment upon the weight of the evidence or upon the credibility of the witnesses. * * * Generally injurious remarks made by the judge are subject to the same rules as improper arguments by counsel. His conduct may justify the granting of a new trial and the reversal of a judgment. This applies to unnecessary comment which tends to prejudice a litigant or which probably influences the jury in their decision, so the judge may not comment on the weight of the evidence that has already been introduced, or of that which may subsequently be introduced. Any such comment is ground for new trial or reversal. * * * Great care should be exercised to prevent the jury from ascertaining the view of the judge upon the credibility of witnesses."

■■ It was not necessary for the court to give any information whatever to the jury as to the cause of the delay, and we think the remark was improper, in view of the fact that the witness' testimony contradicted the evidence of two other witnesses, and presented a sharply contested issue to be decided by the jury. When the court emphasized the importance of the witness' testimony to the defendant, it stressed the witness' credibility and was upon the weight of his testimony.

64 C.J. 90, § 91, says: "In accordance with the general rule that the presiding judge at a trial must conduct it in a fair and impartial manner, he should refrain from making unnecessary comment or remarks during the course of a trial which may tend to result prejudicial to a litigant, or calculated to influence the minds of the jury. A remark or comment which is shown to be prejudicial to the rights of the party complaining, or which is such that it may be assumed prejudicial will result therefrom, is fatal to the validity of the trial." See, also, 31 Tex.Jur. 30, § 27; Speer on Special Issues, §§ 193 and 194; Southland Greyhound Lines v. Matthews (Tex.Civ.App.) 74 S.W.(2d) 713, 716; Commercial Standard Ins. Co. v. Walls

**710**

(Tex.Civ.App.) 56 S.W.(2d) 244; Texas Employers Ins. Ass'n v. Adcock (Tex.Civ. App.) 27 S.W.(2d) 363; McDaniel v. Orr (Tex.Com.App.) 33 S.W.(2d) 427; Texas & Louisiana Lumber Co. v. Rose (Tex.Civ. App.) 103 S.W. 444; Smith v. Dunman, 9 Tex.Civ.App. 319, 29 S.W. 432.

The fact that the court had no intention of intimating what his opinion was as to the importance of the witness' testimony, or the witness' credibility, is immaterial.

As said in Jackson v. State (Tex.Cr. App.) 87 S.W.(2d) 482: "It is unfortunate that the district attorney made the mistake; nevertheless his statement had the same injurious effect and was as much a violation * * * as if made intentionally."

It is said in Southland Greyhound Lines v. Matthews, supra: "Generally, injurious remarks by the trial judge should be subject to the same rule as improper argument by counsel. Thus, when the remark is of such a nature that its injurious effect cannot be removed by the judge withdrawing it or by instructing the jury not to consider it, motions to that effect are not required. In our judgment the remark complained of falls within this rule. It was not necessary for defendant to ask the court to declare a mistrial in order to preserve its exceptions to remarks of the character under discussion. Such a motion is not necessary to save the point against prejudicial argument fundamentally erroneous."

Believing that the court erred to the prejudice of the appellant by the remark complained of, the judgment is reversed, and the cause remanded.