**CRAWFORD CHEVROLET, INC., Appellant,**

v.

**Marvin McLARTY, Jr., Appellee.**

**No. 8497.**

Court of Civil Appeals of Texas,
Amarillo.

Jan. 31, 1975.

Rehearing Denied March 10, 1975.

Shelton & Gilkerson, Lubbock (Dennis W. McGill, Lubbock), for appellant.

Wagonseller & Cobb, Lubbock (Dennis R. Burrows, Lubbock), for appellee.

ELLIS, Chief Justice.

Crawford Chevrolet, Inc., defendant-appellant, has brought this appeal from a judgment entered by the trial court awarding to Marvin McLarty, Jr., plaintiff-appellee, recovery of damages allegedly resulting from certain deceptive trade practices on the part of the defendant, together with attorney's fees and court costs, in accordance with designated provisions of the Deceptive Trade Practices-Consumer Protection Act, Title 2, Chapter 17, subchapter E, V.T.C.A., Bus. & C. Affirmed.

The controversy arose from a transaction in which McLarty purchased a Chevrolet Blazer automobile from Crawford

Chevrolet, Inc. On January 12, 1973, McLarty went to the Crawford Chevrolet showroom in Slaton, Lubbock County, Texas to negotiate the purchase of a new Chevrolet Blazer four-wheel drive automobile. McLarty had previously attempted to purchase a Blazer from dealers in the City of Lubbock, but had been unable to find anyone who could promise delivery of the vehicle. Upon arrival at Crawford Chevrolet, McLarty discussed the possibility of ordering a new Blazer with Billy Moore, a salesman of Crawford Chevrolet. Such purchase was negotiated between Billy Moore and McLarty on January 12, 1973, and on or about January 13, 1973, the Blazer was ordered from the Chevrolet factory by Crawford Chevrolet. At the time of placing the order, McLarty gave Billy Moore a $200 check as a deposit on such order, which check was duly accepted, negotiated and paid. Because of factory delays over which Crawford had no control, the Blazer did not arrive from the factory until July 9, 1973.

It is not disputed that approval of all purchase agreements was required to be made by authorized persons within the appellant corporation or that an order for the purchase of the Blazer was approved by an authorized person; however, the price approved is in dispute. McLarty contends that the price approved was $4,000 including taxes and licenses and Crawford Chevrolet contends the approved price was $4,683.65. The copy of the instrument dated January 12, 1973, introduced in evidence by McLarty showed the vehicle originally priced at $4,683.65, with a proposal written thereon signed by McLarty whereby McLarty offered $4,000 for the vehicle including taxes and licenses, and such offer was initialed by Crawford's sales manager in the blank indicating acceptance of the $4,000 offer. The copy of the January 12, 1973 instrument introduced in evidence by the defendant showed the $4,000 offer crossed out leaving the $4,683.65 figure as the approved and accepted price of the vehicle. On July 9, 1973, the date of deliv-

ery of the vehicle, another instrument showing a price of $4,234.76 was drawn and executed, and such sum was paid by McLarty for the vehicle.

McLarty brought suit against Crawford Chevrolet alleging that the $234.76 difference between the $4,000 which he agreed to pay for the Blazer and the $4,234.76 actually received by Crawford Chevrolet for the vehicle delivered was paid under protest and as a result of coercion by the appellant. Further, it was alleged that the additional $234.76 necessarily paid by McLarty to obtain delivery of the ordered vehicle and the new instrument executed setting out the price of the vehicle as $4,234.76 were the result of deceptive trade practices on the part of Crawford Chevrolet in violation of Section 17.46(a), (b)(11)(12) and (14), of the Texas Business and Commerce Code. The substance of these provisions is hereinafter set out in reference to the instructions submitted to the jury. McLarty sought recovery of the sum of $234.76 as damages, trebled, plus attorney's fees and costs, pursuant to the provisions of Section 17.50(b)(1) of the Texas Business and Commerce Code.

The defendant Crawford answered by general denial. Also, Crawford contended that the sum of $4,234.76 set out in the July 9, 1973 instrument represented the final agreement between the parties.

Upon trial, nine special issues were submitted to the jury. The issues, as submitted, were preceded by the following instructions which contain substantially the pertinent language of Section 17.46(a), (b)(11)(12) and (14) of the Texas Business and Commerce Code, referred to in plaintiff's original petition:

"You are instructed that wherever in the following Special Issues the term 'Deceptive Trade Practice' is used it means any false, misleading or deceptive acts or practices in the conduct of any trade or commerce. The term 'false, misleading, or deceptive acts or practices'

includes, but is not limited to, the following acts:

"(1) Making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

"(2) Representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law;

"(3) Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction."

In summary, from the issues as submitted and the responses thereto, the jury made the following findings: (1) there was an agreement whereby $4,000 was the purchase price of the vehicle; (2) Crawford misrepresented to McLarty the authority of the salesman or sales manager to negotiate the final terms of a consumer transaction; (3) such misrepresentation was a deceptive trade practice; (4) McLarty was coerced into signing an instrument dated July 9, 1973 showing $4,234.76 as the purchase price; (5) such coercion was a deceptive trade practice; (6) the Blazer delivered contained equipment which was not ordered; (7) the increase in price McLarty was required to pay was not a result of an agreement to pay for additional equipment; (8) McLarty suffered no damage from the deceptive trade practice; and (9) $500 is a reasonable attorney fee. The trial court, upon motion by plaintiff, disregarded the jury's answer to issue number 8 wherein it found that McLarty suffered no damage from the defendant's deceptive trade practices, and entered judgment for $234.76, trebled, equaling $704.28, plus $500 attorney fees and court costs. Crawford Chevrolet has perfected this appeal from such judgment.

During the course of the trial, appellant sought to present evidence of a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any error, as provided as a defense within Section 17.54, Texas Business and Commerce Code. The appellee duly objected to such evidence on the ground that such defense had no basis in the pleadings. The trial court specifically ruled that the defense was not available to appellant because the action was brought by an individual consumer pursuant to Section 17.50 rather than a class action brought under Section 17.51, and that the defenses against damages under Section 17.54 are limited to class actions. By point of error number 1, appellant contends that the trial court's action was erroneous because it was denied a defense available to others and such denial was in violation of its right to equal protection of the laws as provided by Article I, Section 3 of the State of Texas Constitution, Vernon's Ann.St., and the Fourteenth Amendment to the United States Constitution. It was also contended that such denial of the defense was in contravention of appellant's right to due process of law as provided by Article I, Section 19 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.

Section 17.54 is entitled "Damages: Defense" and provides:

"No award of damages may be given in any action filed under Section 17.51 of this subchapter if the defendant:

"(1) proves that the action complained of resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any error;
. . . .''

Section 17.51 is entitled, "Class Actions" and provides a remedy in the form of a class action for certain specified consumers. Section 17.50 is entitled, "Relief for Consumers" and provides a cause of action and damages for "a consumer" when adversely affected by certain enumerated acts. It is apparent from the language of the Act that the legislature intended to classify and treat differently a class action

and an individual action, i.e., three times actual damages are allowed under Section 17.50, while only actual damages are allowed under Section 17.51, and the defense of "bona fide error" is permitted with respect to class actions. It is well settled that the legislature may classify subjects of legislation so long as the law applies uniformly to those falling within a particular class. 12 Tex.Jur.2d Constitutional Law § 110 (1960), and cases cited therein. However, such classification must not be arbitrary or unreasonable but rather must be based on a real and substantial difference having a relation to the subject of the particular enactment. Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384; Weaver v. Newton County Water Supply District, 346 S.W.2d 156 (Tex.Civ.App.— Austin 1961, writ ref'd n.r.e.); Ex Parte Rubin, 362 S.W.2d 331 (Tex.Cr.App.1962). The test to be applied is whether there is any basis for the classification which could seem reasonable to the legislature. San Antonio Retail Grocers, Inc. v. Lafferty, 156 Tex. 574, 297 S.W.2d 813 (1957). There is a general presumption that the legislature has done its duty and not violated the Constitution; and the classification should be upheld unless it appears clearly and without doubt that it has no reasonable basis of support. Alobaidi v. State, 433 S. W.2d 440 (Tex.Cr.App.1968); Patterson v. City of Dallas, 355 S.W.2d 838 (Tex. Civ.App.—Dallas 1962, writ ref'd n.r.e.).

It is apparent that a class action brought under the Deceptive Trade Practices and Consumer Protection Act contemplates various transactions between a defendant and a number of individual consumers and that Section 17.54 provides a defense if a defendant is able to establish a "bona fide error notwithstanding the use of reasonable procedures adopted to avoid any error." This would normally involve reliance upon general safeguard procedures of the defendant organization to prevent errors, but which errors, despite such reasonable safeguards, were not detected and thus the "bona fide error" defense would be available. A class action would usually contemplate the involvement of a greater total sum of money with a relatively less burden and expense upon an individual consumer to seek relief than in an action brought by an individual, and thus there would be a more reasonable justification for the allowance of recovery for actual rather than treble damages. Further, if it is not a class action, or one that would not normally happen unless there is a specific intent on the part of the defendant, then it is more likely that the defendant should be aware of the alleged deceptive act and thus be in a better position to defend the conduct in an isolated instance as compared to a "volume" business situation. It appears reasonable that it would be a heavier burden upon an individual consumer, as compared to a class, to establish a case of deceptive practice, and, because of the greater burden assumed, it would be appropriate that the recovery allowable be proportionately greater to justify or motivate his individual effort to establish the cause of action.

It has been held that defenses may be available or more liberal with respect to one class or individual compared to another class or individual without violation of constitutional provisions of due process or equal protection. See State v. Richards, 157 Tex. 166, 301 S.W.2d 597, 598 (1957); Commercial Insurance Company of Newark, N.J. v. Adams, 366 S.W.2d 801 (Tex. Civ.App.—Houston 1963, writ ref'd).

■■ The rule is well established that a law duly enacted is presumed to be valid and doubts as to its constitutionality should always be resolved in favor of constitutionality. Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155 (1948); Ohio Oil Co. v. Giles, 149 Tex. 532, 235 S.W.2d 630 (1950). A statute should, if reasonably possible, be given a construction that will not render it invalid. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960); County of Cameron v. Wilson, 160 Tex. 25, 326 S.W. 2d 162 (1959).

It is our opinion that the legislative classifications of individual actions and class actions under the Deceptive Trade Practices Act reasonably promote a proper object of public welfare or interest, rest upon real and substantial differences, with a reasonable relation to the subject of the legislation and affect all persons in each classification in the same manner.

It is further noted that in the instant case, the defendant's answer was essentially in the form of a general denial and set forth no affirmative defenses. Thus, the claimed defense of "bona fide error," even if available, should be regarded as waived. See 2 McDonald, Texas Civil Practice § 7.34.1–C (Rev.1970); McDonald v. Savoy, 501 S.W.2d 400 (Tex.Civ.App.—San Antonio 1973, no writ); Quanah A. & P. Ry. Co. v. Bone, 199 S.W. 332 (Tex.Civ.App.—Amarillo 1917, no writ).

In the light of the foregoing, it is our opinion that, under the pleadings, facts and circumstances of this case, the court did not err in denying the "bona fide error" defense as urged by the defendant. The appellant's first point is overruled.

By point number 2 appellant contends that the trial court erred in disregarding the jury's answer to special issue number 8 and in granting plaintiff's motion for judgment non obstante veredicto because the jury's finding of no damage was supported by the evidence and was a question of fact, not law. Special issue number 8 reads:

"What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate the plaintiff, Marvin McLarty, Jr., for his losses resulting from the deceptive trade practices of Crawford Chevrolet, Inc., if any?

"Answer by stating the amount, if any, in dollars and cents or by stating 'none'."

The jury answered, "None."

Appellee sought judgment upon the findings of the jury by disregarding the answer to special issue number 8, and filed a motion for judgment non obstante veredicto. Judgment was entered by the trial court upon such motion, reciting that the answer to special issue number 8 was disregarded upon the basis of the admitted facts, the implied findings of the court, and the undisputed and uncontradicted evidence.

The court is authorized to disregard answers of the jury only if an instructed verdict thereon would have been proper. Eubanks v. Winn, 420 S.W.2d 698 (Tex.1967). And an instructed verdict is proper only when the jury's answer to a special issue has no support in the evidence or when the issue is immaterial. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.1966).

Appellee alleged and presented evidence of an agreed price for the vehicle of $4,000, the July 9, 1973 instrument showing a price of $4,234.76 which was obtained by coercion, payment of $234.76 in addition to the agreed price, and a loss occasioned by such extra payment of $234.76. It was further alleged and the jury found that the coercion was a deceptive trade practice. The agreed price of $4,000 was disputed by appellant and it was contended that the $4,234.76 was the final agreed price. However, it was not disputed that appellee was required to pay $4,234.76 in order to obtain delivery of the Blazer vehicle. Special issue number 1 inquired as to whether there was an agreement for $4,000 on January 12, 1973, and special issue number 4 inquired as to whether McLarty was coerced into signing the instrument dated July 9, 1973, by Crawford Chevrolet. Special issue number 5, conditioned upon an affirmative answer to issue number 4, inquired as to whether the coercion was a deceptive trade practice. We note here that the record discloses that the type of vehicle involved was rather scarce and delivery was considerably delayed. Also,

there is evidence that the appellee had made the required deposit when placing the order; that he had relied upon obtaining the ordered vehicle; that he continued to use his older vehicle although he was out substantial expenses for repairs; and he took no steps to obtain a substitute automobile because of his need for this particular type of four wheel drive vehicle for use in connection with his land selling season which was scheduled to begin in September, 1973. When the vehicle was received by the dealer, the dealer insisted that he could quickly sell it for an extra $500 above the price appellee insisted he had contracted to pay. In connection with this aspect of the case, the record reflects the following testimony by McLarty given in his answers on direct examination:

"Q Then did—in your conversation with Mr. Crawford did he state to you that even though there was an instrument, I'll call it an instrument, signed by you and approved by his sales manager back in January of 1973, that at this point in July of '73 that Mr. Crawford was not going to honor and live up to the obligations in that agreement?

"A He made that statement, that he would not do it.

"Q Therefore, is that the reason that you went ahead and paid to Mr. Crawford or Crawford Chevrolet, Inc., the additional sum of $234.76?

"A Yes, and I explained to him at the time the only reason I was doing it was due to their long delay in their promises of getting it in, that I was in the position—I was in no bargaining position with them. I was not in a position to bargain with them."

■ In any event, if the jury answered the issues numbers 1, 4 and 5 negatively, McLarty's loss as a matter of law would be "none;" however, if the issues were answered affirmatively, as they were, the established amount of loss or damage to McLarty would be $234.76, since it is not disputed that such amount was paid by McLarty over and above the alleged agreed price of $4,000. In considering all of the various issues submitted to the jury from which damages, if any, could be determined, the amount of the loss would necessarily be the pleaded amount of $234.-76 or none, depending upon the negative or affirmative answers to issues inquiring as to the liability of the appellant.

Consequently, the answer to special issue number 8 was immaterial when submitted, for the appellee's loss, if any, occasioned by appellant's practices was a matter of mathematical computation and presented no fact issue for jury determination.

■ The plaintiff alleged and submitted evidence as to an agreement or contract for the sale of a vehicle for $4,000, and that the breach thereof, aside from the deceptive practices allegations, resulted in the plaintiff paying $4,234.76 for the Blazer. Under the uncontradicted evidence the amount which would have put the plaintiff in the position he would have been had there been no breach, as alleged, was the sum of $234.76. Further, the defendant is not entitled to rely on a renegotiation or evidence of novation as to the original contract. A discharge of the original contract by novation between the parties must be pleaded; it cannot be shown by a general denial. 13 Tex.Jur.2d Contracts § 388; Prutzman v. Winter, 280 S.W. 266 (Tex.Civ.App.—Beaumont 1926, writ dism'd). The evidence relied upon is, in effect, not that of a new agreement, but that plaintiff did not protest when the defendant failed to deliver the vehicle for the sum of $4,000 and proceeded to pay the sum of $4,234.76 therefor when the defendant required the new order and such payment before making delivery of the vehicle. The appellee insisted that he did protest, but even a failure to establish the protest would raise no inference that appellee was not damaged to the extent of the extra sum paid for the vehicle. Regarding the matter of "extra equipment" claimed to be upon the vehicle when delivered, we find

that the defendant is not in a position to avail himself of any claim for a set off in the present posture of the case, for the defendant was required to specifically plead set-off by way of counterclaim for affirmative relief and is not entitled to prevail with respect to such claim in this suit under a mere general denial. See 52 Tex.Jur.2d Counterclaims § 63, and cases cited therein.

 It is our opinion that under the evidence properly before the jury the amount of damages was established at $234.76. No question for jury determination was presented and it was not error for the trial court to disregard the answer to special issue number 8. Appellant's second point is overruled.

By its point of error number 3, appellant complains of the award of attorney fees when no actual damages should be awarded. Since we have determined that it was not error to award actual damages, the award of attorney's fees should be sustained. The point is overruled.

The trial court instructed the jury to disregard all testimony by witnesses Eddie McGinnis and Tom Ker regarding their opinions as to portions of the "contract," referring to the order of January 12, 1973. Appellant's objection to the designation of the instrument by the court as a contract was sustained. Thereafter, without request by appellant, the court stated that it would "retract the reference to the instrument as a contract" and referred to the "instrument." Appellant raises as its point of error number 4 that the court's reference to the instrument as a contract advised the jury of the court's opinion and conclusion concerning the legal effect of that instrument, and thereby presumed the truth of the plaintiff's pleading about a fundamental controversial issue.

 The general rule is that a presiding judge at a trial must conduct it in a fair and impartial manner and refrain from making unnecessary comment or re-

marks during the course of a trial which may tend to result in prejudice to a litigant, or is calculated to influence the minds of the jury. Erwin v. White, 97 S.W.2d 707 (Tex.Civ.App.—Amarillo 1936, writ dism'd w. o. j.); 56 Tex.Jur.2d Trial § 80 (1964). However, a judgment will not generally be reversed on the basis of improper comments or conduct on the part of a trial judge except where they are shown to have been prejudicial. Flora v. Scott, 398 S.W.2d 627 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.).

 In the instant case, special issue number 1 inquired as to whether an "agreement" for the purchase price of $4,000 was entered into between Marvin McLarty, Jr., and Crawford Chevrolet, not as to whether a "contract" had been entered into. This is the fact issue which was before the jury. From a consideration of the evidence as submitted in the case as a whole, it would appear that no prejudice or harm could have resulted from the court's use of the term "contract," especially when such usage was retracted. Therefore, it is our opinion that such remark by the court has not been shown to have constituted an abuse of discretion or resulted in rendition of improper judgment. See Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849 (1952). Appellant's fourth point is overruled.

Special issue number 1 as submitted to the jury inquired:

"Do you find from a preponderance of the evidence that an agreement was entered into between Marvin McLarty, Jr. and Crawford Chevrolet, Inc. on or about January 12, 1973, under which Marvin McLarty, Jr. agreed to buy one Chevrolet Blazer automobile for $4,000 and Crawford Chevrolet, Inc. agreed to sell one Chevrolet Blazer automobile for $4,000.00?

"Answer: 'Yes' or 'No'.

"Answer: 'Yes.'"

By points 5 and 6 appellant contends that it was error for the trial court to submit the issue because it is a comment on the weight of the evidence. The points of error are based upon the contentions that, as submitted, the issue presumes that there was an agreement, an issue which was in controversy, and conveyed to the jury the conclusion that there was an agreement as to the price of $4,000.

■ Plaintiff alleged in his petition that there was an agreement to sell and purchase a vehicle for $4,000. A copy of a written agreement, dated January 12, 1973, was introduced into evidence by plaintiff wherein the agreed price was purported to be $4,000. Defendant also introduced into evidence a copy of an agreement dated January 12, 1973, wherein the approved price is purported to be $4,683.65. Therefore, it would appear to be undisputed that there was an agreement entered into on January 12, 1973. The disputed facts concerning the agreement are whether such agreement constituted the final agreement of the parties and whether $4,000 was the agreed price at the time the agreement was made. It is the latter question to which special issue number 1 is directed. The ultimate question upon which recovery is predicated is whether there was an agreement for a purchase price of $4,000. When so viewed it is our opinion that such submission did not constitute a comment upon the weight of the evidence. See Dallas Transit Company v. Newman, 380 S.W.2d 818 (Tex.Civ.App.—Dallas 1964, writ dism'd). Further, a reasonable construction of the language of special issue number 1 does not necessarily convey to the jury the conclusion that there was an agreement for $4,000, but on the contrary, inquires whether the jury finds such term to be included in the agreement. Appellant's points of error numbers 5 and 6 are overruled.

■ Appellant's point of error number 7 complains of special issue number 2 as a comment on the weight of the evidence because it presumes an issue in controversy. The issue as submitted is as follows:

"Do you find from a preponderance of the evidence that on July 9, 1973, Crawford Chevrolet, Inc. misrepresented to Marvin McLarty, Jr. the authority of the Defendant's salesman or sales manager to negotiate the final terms of a consumer transaction?

"Answer 'Yes' or 'No.' "

The significant element of the issue is the determination of whether there was a misrepresentation on July 9, 1973, by Crawford Chevrolet as to the authority of the salesman or sales manager to negotiate the final terms of a consumer transaction. Further, it is uncontradicted that the sales manager had the authority to negotiate the final terms of a consumer transaction, and thus no harm would accrue to the defendant even if that fact had been assumed in special issue number 2. Any concern of the defendant as to the jury's determination of the authority of its representative in relation to the January 12, 1973 instrument was covered in its answer to special issue number 1. In any event, it is our opinion that special issue number 2, drafted in the specific terms of Section 17.-46(b)(4) of the Deceptive Trade Practices and Consumers Protection Act (subdivision 3 of the quoted jury instructions), and when viewed in the context of the case as presented does not effectively constitute a comment on the weight of the evidence. Appellant's point number 7 is overruled.

■ Appellant's point of error number 8 complains of the manner of submission of special issue number 4. Such issue reads:

"Do you find from a preponderance of the evidence that Marvin McLarty, Jr. was coerced into signing the instrument dated July 9, 1973, by Crawford Chevrolet, Inc. in that Crawford Chevrolet, Inc. would not deliver said Chevrolet Blazer

automobile to Marvin McLarty, Jr. unless he signed the instrument dated July 9, 1973?

"Answer 'Yes' or 'No'

"Answer: 'Yes.'"

The complaint is based upon the contention that the issue is multifarious, inquiring as to the existence of coercion and, in addition, as to whether the vehicle would not have been delivered. It is our opinion that the issue is not multifarious, but only makes one controlling inquiry as to the existence of coercion. The wording of the issue as to whether Crawford would deliver the vehicle unless a further instrument was signed merely describes the coercion inquired about. In a previous portion of this opinion it was pointed out that the record contains evidence of McLarty's protest, his specific need for the particular vehicle and the defendant's insistence that he could quickly obtain a higher price than $4,000 for the vehicle. It is well established that an issue is not multifarious merely because it groups more than one fact element therein, so long as it involves only one ultimate or controlling issue. Industrial Oxygen Company v. Campbell, 405 S.W.2d 794 (Tex.Civ.App.—Waco 1966, no writ); Missouri-Kansas-Texas RR. Co. v. Shelton, 383 S.W.2d 842 (Tex.Civ.App. —Dallas 1964, writ ref'd n.r.e.). Appellant's point of error number 8 is overruled.

Appellant complains by its point number 9 that the court erred in overruling defendant's objection and exception that special issue number 7 is a comment on the weight of the evidence because it presumes there was an agreement as to price between the parties on January 12, 1973. Special issue number 7 reads:

"Do you find a preponderance of the evidence that the increase in price, if any,

of the instrument dated July 9, 1973 over the instrument dated January 12, 1973 was by agreement of the parties to pay for said additional equipment, if any?

"Answer 'Yes' or 'No'.

"ANSWER: 'No'"

◼️ The record discloses that the appellant made no specific objection or exception to the submission of such issue in its objections and exceptions to the court's charge, and that such complaints regarding the submission of such issue was raised for the first time on motion for new trial. It has been held that if an alleged defect or objection to an issue is not pointed out in the objections to the court's charge or was raised for the first time on motion for new trial the asserted error is deemed waived. Rules 272, 274, Texas Rules of Civil Procedure; Larson v. Ellison, 147 Tex. 465, 217 S.W.2d 420 (1949); Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979 (1948); Volkman v. Eakman, 496 S.W.2d 752 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). Further, points complaining of the charge as a whole were too general for consideration. Security State Bank and Trust v. Craighead, 440 S.W.2d 701 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.). Appellant's ninth point is overruled.

After considering the pertinent provisions of the Deceptive Trade Practices and Consumer Protection Act in the light of the clear legislative purposes set forth therein, the pleadings, together with the jury's findings under the issues submitted and the facts and circumstances of this case, we find no reversible error in the judgment entered. Accordingly the judgment of the trial court is affirmed.