Jackie WOODS et ux., Petitioners,

v.

B. L. LITTLETON et al., Respondents.

No. B–6270.

Supreme Court of Texas.

June 29, 1977.

As Corrected On Denial of Rehearing
July 26, 1977.

**663**

Hitt & Pesek, Cahill Hitt, Texarkana, for petitioners.

Atchley, Russell, Waldrop & Hlavinka, Norman C. Russell, Texarkana, for respondents.

SAM D. JOHNSON, Justice.

Alleging the existence of a defective sewer system and faulty repair work, Jackie and Cheryl Woods sued B. L. Littleton and Joe S. Thomson, doing business as Superior Construction Company, asserting as one of their grounds for recovery a violation of the Deceptive Trade Practices-Consumer Protection Act, Texas Business and Commerce Code, Section 17.41, *et seq.*[1] Two issues must be resolved: (1) whether the Consumer Protection Act applies to the circumstances of the instant case; and, if so, (2) whether treble damages are mandatory. The trial court, on the basis of a jury verdict, held the Consumer Protection Act applicable and that the act of the defendants was a deceptive practice. The trial court then rendered judgment for Jackie and Cheryl Woods. Although the trial court assessed the court costs against Littleton and Thomson and awarded the couple reasonable attorneys' fees pursuant to Section 17.50(b)(1) of the Consumer Protection Act,[2]

---

[1] The Consumer Protection Act, originally enacted on May 21, 1973, was amended effective September 1, 1975 and effective May 23, 1977. The references herein to the Consumer Protection Act pertain to the statute as enacted in 1973 unless otherwise indicated.

[2] Section 17.50(b): "In a suit filed under this section, each consumer who prevails may obtain:

"(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended;

"(2) an order enjoining such acts or failure to act;

"(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

"(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment. The court may not revoke or suspend a license to do business in this state or

it declined to treble the actual damages, which consisted of awards for mental anguish and the diminished value of the home. The court of civil appeals held the evidence was insufficient to support the jury findings on the diminished value of the home and that the special issue regarding mental anguish was defective. In remanding to the trial court, the court of civil appeals commented that the Consumer Protection Act did not apply. 538 S.W.2d 800. We affirm the judgment of the court of civil appeals, which remanded the cause to the trial court.

The couple purchased their newly constructed home on November 10, 1972 from Superior Construction and within a month they experienced difficulties with their sewer system and septic tank. These problems included water backing up from the commode, the washing machine, and the bathtub. Mr. Woods, on numerous occasions, complained to Mr. Joe S. Thomson, a partner in Superior Construction. Several attempts were made by Superior Construction to correct these problems and, according to Mr. Woods, the last one made was in June or July 1973. At that time pipe was added to one of the septic tank's field lines, which extended the field line to within seven or eight feet of the street in front of Mr. Woods' home. Mr. Woods stated this additional field line solved the previous difficulties he had experienced, but created a new one. He asserted the field line came to the surface of his front yard and allowed sewage to run directly onto the land and into the street. In support of this testimony, the record reveals that Mr. Woods was summoned to appear before the Justice Court of Bowie County "for [his] trial upon the penal offense of allowing sewage to flow into a public street." He testified he was assured by a representative of Superior Construction that the additional field line would cure any problems. When the additional

field line caused sewage to run into the street, Mr. Woods stated he renewed his complaints to Mr. Thomson.

Byron Littleton, Jr., who was a work supervisor for Superior Construction, also described the steps taken to solve Woods' sewer problems. First, as a temporary measure, the workers dug to the end of a field line to relieve the pressure forcing the sewage back into the house. Next, this hole was enlarged and eight yards of wash rock was placed in it in the hope that this work would solve the problems. The problems persisted, however, and Superior Construction returned and added approximately 100 feet to the field line on which they had previously worked. This additional 100 feet extended the field line to the front of Woods' yard and, according to Littleton, Jr., was at least eight inches below the surface. He also testified that these repairs were completed by March 1973.

Mr. Joe S. Thomson, a partner in Superior Construction, testified that at the time of purchase the house was substantially complete and that a one-year warranty was given to the purchasers, Jackie and Cheryl Woods, to do whatever was necessary to put the house in final shape and to repair anything that went wrong.

The jury found that either Joe S. Thomson or B. L. Littleton, after May 21, 1973 (the effective date of the Consumer Protection Act), told Woods that the sewer system was in good working order and further found such statement was a "deceptive trade practice."[3] The jury then proceeded to find: (1) $5,000 would compensate Jackie and Cheryl Woods for the mental anguish they suffered; (2) the lack of a properly working septic tank system diminished the value of the home by $5,000; (3) $2,000 would be reasonable attorneys' fees for the trial of the cause; (4) $1,000 would be reasonable attorneys' fees for an appeal to the court of civil appeals; (5) $500 would be

appoint a receiver to take over the affairs of a person who has failed to satisfy a judgment if the person is a licensee of or regulated by a state agency which has statutory authority to revoke or suspend a license or to appoint a receiver or trustee."

3. The jury also made findings favorable to Jackie and Cheryl Woods on their other causes of action based on a breach of a warranty of workmanlike construction, on a breach of a warranty of merchantability, and on negligent construction.

reasonable attorneys' fees for applying for a writ of error to the supreme court; and (6) $500 would be reasonable attorneys' fees for the amount of time expended if the application for writ of error was granted.

To resolve the issues in this appeal, this court must interpret the Consumer Protection Act. The Legislature has declared that "[i]n all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Article 10, Section 6, Texas Revised Civil Statutes Annotated. Expanding upon the command of the Legislature to diligently look for its intention, this court wrote:

"The fundamental rule controlling the construction of a statute is to ascertain the intention of the Legislature expressed therein. That intention should be ascertained from the entire act, and not from isolated portions thereof. This Court has repeatedly held that the intention of the Legislature in enacting a law is the law itself; and hence the aim and object of construction is to ascertain and enforce the legislative intent, and not to defeat, nullify, or thwart it. . . . It is settled that the intention of the Legislature controls the language used in an act, and in construing such act the court is not necessarily confined to the literal meaning of the words used therein, and the intent rather than the strict letter of the act will control." *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951).

With respect to the statute in question, the Consumer Protection Act, the Legislature gave additional, and even more explicit, guidance for the construction and application of the Act by declaring:

"This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Texas Business and Commerce Code, Section 17.44.

■ The initial issue to be decided is whether there has been a violation of the Consumer Protection Act. The statute provides: "The provisions of this subchapter apply only to acts or practices occurring after the effective date [May 21, 1973] of this subchapter, . . . ." [Section 17.63]. In the instant case the jury found: (1) Thomson or Littleton, after May 21, 1973, told Woods the sewer system was in good working order; and (2) such statement was a deceptive practice. Although the sale which initiated the chain of events which led to the act complained of occurred prior to the effective date of the Act, that fact does not preclude recovery under the Consumer Protection Act for a deceptive practice occurring after the effective date of the Act, May 21, 1973. Two courts of civil appeals have already so held, and a third has indicated approval of these holdings.

In *Town & Country Mobile Homes, Inc. v. Stiles,* 543 S.W.2d 664 (Tex.Civ.App.—El Paso 1976, no writ), Stiles purchased, on September 6, 1972, a mobile home manufactured by Town & Country. Stiles complained of numerous defects in the home and Town & Country sent a service representative to make repairs on two occasions; the last time on June 18, 1973. Town & Country's representative worked on a heat duct, installed an extra heat register in one bedroom, and repaired a leaking back door. On July 10, 1973 the service manager of Town & Country wrote Stiles and stated in part: "I hope you are liking your mobile home a lot better, now that you have it all fixed up." The court concluded that even though the mobile home was sold before the effective date of the Consumer Protection Act a cause of action existed under the Act, Section 17.46(b)(13),[4] because Town & Country made repairs after May 21, 1973 and

---

4. Section 17.46(b)(13): "(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . (13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service; . . . ."

also stated after May 21, 1973 that the mobile home was "all fixed up."

A similar result obtained in *Crawford Chevrolet, Inc. v. McLarty,* 519 S.W.2d 656 (Tex.Civ.App.—Amarillo 1975, no writ). Prior to the effective date of the Act, on January 12, 1973, McLarty purchased an automobile from Crawford Chevrolet. The vehicle was ordered by Crawford Chevrolet from the manufacturer shortly thereafter. However, the vehicle did not arrive until July 9, 1973, or after the effective date of the Act. On that same day, July 9, 1973, McLarty was told by the owner of the dealership, Crawford, that the sales representative who sold the automobile to McLarty did not have authority to negotiate the final terms of the sale and demanded an additional $234.76 on the purchase price, which McLarty paid. The record was uncontradicted that the sales representative did have the authority to negotiate the final terms of the sale and the jury found that Crawford's statement to the contrary was a deceptive practice. Again, the court of civil appeals held that the Consumer Protection Act applied since the deceptive practice— the denial by Crawford of the authority of the sale representative to negotiate the final terms and the demand for additional monies—occurred after May 21, 1973.

Finally, in *Cape Conroe Limited v. Specht,* 525 S.W.2d 215, 219 (Tex.Civ.App.— Houston [14th Dist.] 1975, no writ), the court cited *Crawford Chevrolet, Inc. v. McLarty, supra,* as one ground for its conclusion that no cause of action existed under the Consumer Protection Act in the case before it as all of the representations and warranties were made prior to May 21, 1973. We conclude that the date of the acts which give rise to the cause of action under the Consumer Protection Act, rather than the date of the sale, determines the applicability of the Act.

The next issue is whether, with respect to the particular practice in this case, Jackie and Cheryl Woods are "consumers" within the meaning of the Consumer Protection Act and are therefore entitled to the remedies explicitly provided by that Act for "consumers." The statute defines "consumer" to mean "an individual who seeks or acquires by purchase or lease, any goods or services" [Section 17.45(4)]; defines "goods" to mean "tangible chattels bought for use" [Section 17.45(1)]; and defines "services" to mean "work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods" [Section 17.45(2)]. It should be noted that "services" as defined in the statute as enacted is not limited to "services" relating to "goods" but rather includes *any* service, work, or labor for other than commercial or business use.[5]

■ Since the builders, Superior Construction, promised to repair any defects in the home that arose within the first year, Woods not only purchased the real property but also, and in addition, the services of the builders as that term "services" is used in the statute. Moreover, the statement made by one of the builders (either Thomson or Littleton) after May 21, 1973 that the repairs to the sewer system placed it in good working order when in fact they did not, is a deceptive practice arising from the separate contract for services. It does not arise from the accompanying sale of real estate.[6]

This view of the meaning of the word "services" is supported by the interpreta-

---

**5.** As amended effective May 23, 1977, "services" means "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."

**6.** The statement that the repairs to the sewer system placed it in good working order when in fact they did not, violates Section 17.46(b)(13): "(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . (13) knowingly making false or misleading statements of fact

concerning the need for parts, replacement, or repair service; . . . " The statement also created an additional express or implied warranty to the service contract and the failure to comply with that warranty may give rise to a cause of action under Section 17.50(a)(2): "(a) A consumer may maintain an action if he has been adversely affected by any of the following: . . . (2) a failure by any person to comply with an express or implied warranty; . . . "

tion given to the term "services" in another statute which also awards attorneys' fees. Article 2226, Texas Revised Civil Statutes Annotated, provides:

"Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for *services* rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured or suits founded upon a sworn account or accounts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such persons or corporation, he may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees." [7] [Emphasis added.]

Discussing the difference between "services" and "personal services" in relation to Article 2226, the court, in *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 895 (Tex. 1962), wrote:

"Webster's Third New International Dictionary gives a general definition of 'service' as 'action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object.'"

Since the 1971 amendment of Article 2226, which substituted the word "services" for "personal services," it has been held that "services" includes the furnishing of electrical energy, *Caston v. Texas Power & Light Co.,* 501 S.W.2d 472 (Tex.Civ.App.—Texarkana 1973, no writ), the servicing of oil field wells, *Texcalco Inc. v. McMillan,* 524 S.W.2d 405 (Tex.Civ.App.—Eastland 1975, no writ), the preparing of the ground for a construction project, *Mathews Const. Co. v. Jasper*

*Housing Const.,* 528 S.W.2d 323 (Tex.Civ. App.—Beaumont 1975, writ ref'd n. r. e.), and the designing and furnishing of brochures, *Allison v. Douglas,* 531 S.W.2d 445 (Tex.Civ.App.—Waco 1975, no writ). Clearly, a promise to repair any defects in a home is a promise to provide "services for other than commercial or business use."

■ This interpretation of the word "services" is not only in accord with the declared purposes of the statute and the commands of Article 10, Section 6, and of Section 17.44 of the Consumer Protection Act, but it is also in accord with the 1975 amendments which were described as simply clarifying the statute and which define "services" to include services furnished in connection with the sale of real property [Sections 17.45(1) and (2)]. Accordingly, as purchasers of "services," Jackie and Cheryl Woods are "consumers" within the meaning of the Consumer Protection Act.[8]

Littleton argues that the fact the deceptive practice emanated from a real estate transaction on November 10, 1972, and the fact that the definition of "consumer" originally contained in the Act [9] did not clearly include a purchaser of real estate, requires the conclusion that Jackie and Cheryl Woods are not "consumers." We reject this contention. Just as the date of the deceptive practice, rather than the date of the sale, determines the applicability of the statute, the fact that the deceptive practice arises from the sale of "services" on November 10, 1972, rather than the real estate sold on that date, is determinative of the applicability of the Consumer Protection Act.

■ Moreover, the Act as originally enacted clearly declares deceptive practices in the conduct of a real estate sale to be unlawful. The statute provides: "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are

7. Prior to the 1971 amendments, Article 2226 was limited to "personal services rendered."

8. The issue of whether a person who is not a "consumer" has a cause of action under the Act is therefore not reached.

9. As amended effective September 1, 1975, "consumers" clearly includes purchasers of real estate. Sections 17.45(1) and (4).

hereby declared unlawful" [Section 17.-46(a)]; and defines "trade" and "commerce" to "mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state" [Section 17.45(6)]. Since a deceptive practice in the conduct of a real estate transaction is specifically declared to be unlawful, it cannot be said that Jackie and Cheryl Woods are to be excluded from the category of "consumers" and denied the protection of the Act afforded "consumers" merely because the sale included real estate as well as "services." [10] To the extent that *Cape Conroe Limited v. Specht, supra,* suggests a contrary result, that case is disapproved.

Having ascertained that the Act is applicable and that Jackie and Cheryl Woods are "consumers" within the meaning of the statute, the next issue is the amount of damages to which they are entitled. The jury awarded damages for mental anguish in the amount of $5,000. The court of civil appeals held the form of the following special issue on damages for mental anguish deficient:

"What sum of money, if any, if paid now in cash, do [you] find from a preponderance of the evidence would fairly and reasonabl[y] compensate Jackie Woods and his wife Cheryl Woods for the mental anguish they have suffered in the past, if any, as a result of the occurrence in question."

Generally, this special issue would be sufficient to place before the jury the question of mental anguish. However, if treble damages are mandatory under the Consumer Protection Act, then it would be necessary for the jury to decide the actual damages for mental anguish attributable to a violation of that statute. Stated another way, if treble damages are mandatory under the Consumer Protection Act, then in the instant case the jury would have to determine the actual damages which were caused only by the violation of the Act after its effective date, May 23, 1973.

Section 17.50(b) provides:

"In a suit filed under this section, each consumer who prevails *may* obtain:

"(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended;

"(2) an order enjoining such acts or failure to act;

"(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

"(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment. The court may not revoke or suspend a license to do business in this state or appoint a receiver to take over the affairs of a person who has failed to satisfy a judgment if the person is a licensee of or regulated by a state agency which has statutory authority to revoke or suspend a license or to appoint a receiver or trustee." [Emphasis added.]

Thomson and Littleton contend the use of the word "may" *permits* a court to award damages ranging from actual damages up to and including treble damages. Jackie and Cheryl Woods maintain once they establish all of the elements of a cause of action as "consumers" under the Consumer Protection Act then the Act itself *requires* that the actual damages suffered be trebled.

■ The position of the word "may" dictates the conclusion that the Legislature intended the treble damages to be mandatory. The word "may" appears in the introductory phrase to the list of alternative

10. The question of whether a pre-May 21, 1973 sale of real estate alone can give rise to a cause of action under the Consumer Protection Act is not before this court.

remedies made available by the Act to consumers. Significantly, the word "may" does not appear in any of the four enumerated subsections. Given the position of "may," it cannot be doubted that the Legislature intended "may" to indicate that the consumer has several remedies from which to choose and that the court is to grant the consumer that relief which the consumer proves a right to receive. Thus, the individual who establishes all the elements required for injunctive relief shall receive such injunctive relief and, supported by adequate proof, reasonable attorneys' fees and court costs. Similarly, the consumer who proves all the elements required to recover actual monetary damages shall recover three times the actual monetary damages and, supported by adequate proof, reasonable attorneys' fees and court costs. *McDaniel v. Dulworth,* 550 S.W.2d 395 (Tex.Civ. App.—Dallas 1977) [treble damages]; *Volkswagen of America, Inc. v. Licht,* 544 S.W.2d 442 (Tex.Civ.App.—El Paso 1976, no writ) [attorneys' fees]. Maxwell, *Public and Private Rights and Remedies Under the Deceptive Trade Practices—Consumer Protection Act,* 8 St. Mary's L.J. 617 (1977); Bragg, *Now We're All Consumers! The 1975 Amendments to the Consumer Protection Act,* 28 Baylor L.Rev. 1 (1976); *see* Shaw, *Recent Consumer Legislation in Texas,* 37 Tex.B.J. 141 (1974). *But see* Hawkins, *Breach of Warranty and Treble Damages Under the Texas Deceptive Trade Practices and Consumer Protection Act,* 28 Baylor L.Rev. 395 (1976); Lynn, *A Remedy for Undermade and Oversold Products,* 7 St. Mary's L.J. 698 (1976).

As noted in *McDaniel v. Dulworth, supra,* at 396:

" 'May' as used in the introductory phrase of section 17.50(b) has as its subject 'each consumer;' therefore, any discretion lies with the consumer. Merely because the statute uses the permissive 'may' with respect to the consumer is not tantamount to saying that the trial court 'may' determine whether treble damages are awarded. In our view, the clear language permits the aggrieved consumer four different, yet complementary, reme-

dies to rectify the wrong that he alone may elect to pursue. One of these is treble damages. We hold, therefore, that section 17.50(b)(1) is mandatory in requiring treble damages once liability under section 17.50(a) has been established.

. . .

"Our interpretation is in accord with the legislative intent to provide effective relief for aggrieved consumers who would not otherwise sue but for the provision pertaining to treble damages and to reasonable attorney's fees based upon the amount of work expended rather than the amount of actual damages. *To hold otherwise would render ineffective the legislative intent to encourage aggrieved consumers to seek redress and to deter unscrupulous sellers who engage in deceptive trade practices. Indeed, Tex.Bus. & Comm.Code Ann. § 17.44 (Vernon Supp.1976) mandates that the Deceptive Trade Practices and Consumer Protection Act shall be liberally construed so as to protect consumers and to provide efficient and economical procedures to secure this protection.*" [Emphasis added.]

The Legislature, by placing "may" in the introductory phrase to the list of alternative remedies, could not have intended to indicate that the court or the trier of fact was to award damages ranging from actual damages to treble damages.

In the case of *National Surety Corporation v. Ladd,* 131 Tex. 295, 115 S.W.2d 600 (1938), the court faced a situation analogous to the problem of ascertaining the proper construction of the word "may" in the Consumer Protection Act. The court was required to interpret Article 3392, Texas Revised Civil Statutes Annotated (1952), which contained the word "may" preceding a list of circumstances which would require a new bond from an executor or administrator. The statute provided:

"An executor or administrator *may* be required to give a new bond in the following cases:

"1. When the sureties upon the bond or any one of them shall die, remove beyond the limits of the State, or become insolvent.

"2. When, in the opinion of the county judge, the sureties upon any such bond are insufficient.

"3. When, in the opinion of the county judge, any such bond is defective.

"4. When the amount of any such bond is insufficient.

"5. When the sureties or any one of them petition the court to be discharged from future liability upon such bond.

"6. When the bond and the record thereof have been lost or destroyed." [Emphasis added.]

The court also was required to interpret Article 3395, Texas Revised Civil Statutes Annotated (1952), which provided:

"The sureties upon the bond of an executor or administrator, or any one of these, may, at any time, present a petition to the county judge praying that such executor or administrator may be required to give a new bond and that he or they may be discharged from all liability for the future acts of such executor or administrator, whereupon such executor or administrator shall be cited to appear and give a new bond."

After considering the effect of Article 3395 upon Article 3392, the court concluded that the word "may" in Article 3392 does not give a court any discretion where the surety complies with the law and presents a petition for release. Rather, the court held that the surety was entitled to be discharged from any liability for any future acts of an executor or administrator.

In reaching this conclusion, the court also commented that the Legislature intended for the probate judge to require a new bond where "it indisputably appears that a bond is insolvent, or that it is insufficient, or that it is defective, . . ." *National Surety Corporation v. Ladd, supra,* at 602. Accordingly, when any person interested in an estate demonstrated that a bond was insolvent, insufficient, or defective that person established the right to request a new bond and the statute required the court to order a new bond upon the exercise of that right. The word "may" in the statute did not afford the court any discretion under such

circumstances. Similarly, when a consumer establishes all the elements required to recover actual monetary damages, the structure of the Consumer Protection Act, particularly the position of the word "may," mandates that the court treble the actual damages.

In contrast to the instant provision, the Legislature in two other provisions of the statute demonstrated its knowledge of language which would explicitly provide for a range of monetary awards. Section 17.47(c) provides: ". . . the consumer protection division [of the attorney general's office] . . . may request a civil penalty of not more than $2,000 per violation . . ."; and Section 17.47(e) provides: "Any person who violates . . . an injunction under this section [17.47] shall forfeit and pay to the state a civil penalty of not more than $10,000 per violation, not to exceed $50,000." It was reasonable for the Legislature to give the office of the attorney general the authority to seek a range of civil penalties and thus provide a method whereby that office can effectively discourage violations of the Act. Similarly, it was reasonable for the Legislature to provide mandatory treble damages for the individual consumer in order to provide that individual with not only a method to discourage deceptive practices, but also with the incentive to do so.

In addition to the foregoing, the declared purpose of the statute is "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection" [Section 17.44]. The office of the attorney general, in an amicus curiae brief, forcefully argues mandatory treble damages are necessary to effectuate the Act's purposes, asserting that treble damages would create the incentive for the individual "consumer" to file suit and thus lessen the demand for public enforcement actions. As noted in *Crawford Chevrolet, Inc. v. McLarty, supra,* at 661:

"It appears reasonable that it would be a heavier burden upon an individual con-

sumer, as compared to a class, to establish a case of deceptive practice, and, because of the greater burden assumed, it would be appropriate that the recovery allowable be proportionately greater to justify or motivate his individual effort to establish the cause of action."

The office of the attorney general also maintains that mandatory treble damages were intended by the Legislature to create a considerable deterrence to violations of the statute and that such deterrence is a necessary complement to the other remedies made available to law enforcement agencies.

In reply to the office of the attorney general, numerous amicus curiae briefs were submitted which advocated the position that treble damages are not mandatory. The following propositions were among the arguments advanced in these briefs: (1) mandatory treble damages would have a chilling effect on free speech in violation of the First Amendment of the Federal Constitution; (2) corporations, which were included in the definition of "consumer" [Section 17.45(4)] by the 1975 amendments, do not need an incentive to sue for deceptive practices; and (3) mandatory treble damages would create chaos in the marketplace and drive corporations from Texas. Some of these contentions, such as the one listed first, are of dubious merit. Others, such as the last two, are considerations which are more properly for the Legislature rather than this court. Moreover, given the language of the Act, especially the position of the word "may," it cannot be questioned that the Legislature intended to mandate treble damages.

Finally, the most recent amendments (1977) unequivocally demonstrate the 65th Legislature believed treble damages to be mandatory. In 1977 the 65th Legislature, Regular Session, amended the Consumer Protection Act by inserting immediately after Section 17.50 (the treble damage provision), Section 17.50A, which provides:

■ "Damages: Defenses. In an action brought under Section 17.50 of this subchapter, actual damages only and attorney's fees reasonable in relation to the amount of work expended and court costs may be awarded where the defendant:

"(1) proves the action complained of resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid the error; or

"(2) proves that he had no written notice of the consumer's complaint before suit was filed, or that within 30 days after he was given written notice he tendered to the consumer (a) the cash value of the consideration received from the consumer or the cash value of the benefit promised, whichever is greater, and (b) the expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting his claim against the defendant; or

"(3) in the case of a suit under section 17.50(a)(2) [breach of an express or implied warranty], defendant proves he was not given a reasonable opportunity to cure the defects or malfunctions before suit was filed." Tex.Laws 1977, ch. 216, § 6, at 604.

Sections 17.50A(1) and (3) reflect the Legislature's obvious intent to provide certain defenses to treble damages for defendants who "innocently" violate the Consumer Protection Act. However, if the Legislature had originally intended for treble damages to be discretionary this amendment would have been unnecessary because the trial court or the trier of fact would have had the discretion to award only actual damages for "innocent" violations.

■ Considering the structure of the statute as a whole and its declared purpose, it is clear the award of treble damages is made mandatory. To the extent that *Mallory v. Custer*, 537 S.W.2d 141 (Tex.Civ.App.—Austin 1976, no writ), suggests a contrary result, it is disapproved. Since only those damages for mental anguish which resulted from the post-May 21, 1973 deceptive practice are to be trebled, and since the issue submitted to the jury on mental anguish did not inquire as to the amount of damages, if any, which were caused only by the viola-

tion of the Act after its effective date, the court of civil appeals correctly held that the special issue respecting mental anguish was deficient.

It is unnecessary to decide whether any of the issues in the present case could be severed pursuant to Rule 503 of the Texas Rules of Civil Procedure as the issues concerning the liability for the diminished value of the home, the amount of damages for the diminished value of the home, the liability for mental anguish, and the amount of any damages for mental anguish are so intertwined that a severance would be unfair to the parties. The entire cause is remanded to the trial court for retrial. Upon retrial, once the amount of damages, if any, attributable to deceptive practices occurring after May 21, 1973 is determined, it is, by virtue of the language of the Act, to be trebled. Accordingly, the judgment of the court of civil appeals, which remands the cause to the trial court, is affirmed.

Justice YARBROUGH, J., notes his dissent.